## LUMBERMEN'S RECIPROCAL ASS'N v. GILMORE. (No. 2841.)*

(Court of Civil Appeals of Texas. Texarkana. Jan. 30, 1924. Rehearing Denied Feb. 14, 1924.)

Master and servant ⬅385(11¼) — One-eyed employee suffering loss of eye entitled to compensation as for loss of an eye, and not as for "total incapacity."

Under Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—18 to 5246—21, and 5246—24, an employee who enters service with sight of one eye only is entitled, on loss of that eye, to specific compensation for loss of sight of an eye, and not for "total incapacity."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Total Incapacity.]

Hodges, J., dissenting.

Appeal from District Court, Marion County; R. T. Wilkinson, Judge.

Proceeding under the Workmen's Compensation Law by C. K. Gilmore, claimant, opposed by the Downey Lumber Company, employer, and the Lumbermen's Reciprocal Association, insurer. From judgment for claimant on appeal from a ruling of the Industrial Accident Board, insurer appeals. Reversed and rendered.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

Henderson & Bolin, of Daingerfield, and King, Mahaffey & Wheeler, of Texarkana, for appellee.

HODGES, J. This suit began as an appeal under the Workmen's Compensation

Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) from a ruling of the Industrial Accident Board. The material facts are substantially as follows:

In April, 1920, the appellee was in the employ of the D. W. Downey Lumber Company, and while so employed received an injury which caused the loss of the sight of his left eye. Some time prior to his employment he had lost the sight of his right eye. The Downey Lumber Company held a policy in the Lumbermen's Reciprocal Association, conditioned to pay for injuries to its employees the compensation prescribed in the Workmen's Compensation Law of this state. At the time of the injury Gilmore, the appellee, was earning a weekly wage which under the law entitled him to an allowance of $12.10 per week. After receiving the injury he gave the legal notice of his claim for compensation to his employer, the Downey Lumber Company, to the Industrial Accident Board, and to the Lumbermen's Reciprocal Association, the insurer. Thereafter the association, the appellant here, paid to Gilmore $1,210, a sum equal to 60 per cent. of his average weekly wages for 100 weeks, that being the compensation provided by the statute for the loss of the sight of one eye. Upon the receipt of that sum one D. M. Rice, claiming to act as the agent of Gilmore, executed an instrument reciting that the money was received in full payment of Gilmore's entire claim against the appellant for the injury sustained. Some time later the appellee made a claim for further compensation under the terms of the statute. This claim was legally presented to the Industrial Accident Board, but was denied upon the ground that Gilmore had received compensation for the loss of the sight of one eye, all he was entitled to under the statute. This suit was then filed in the district court as an appeal from that ruling of the Industrial Accident Board.

In a trial before the court without a jury a judgment was rendered in favor of Gilmore for the sum of $3,251.49, that being an allowance of $12.10 per week for 400 weeks, less the amount which had already been previously paid under the order of the Industrial Accident Board, and less the proper discount for a lump sum payment. In the trial below the appellant pleaded, in addition to other defenses, the release of further liability by virtue of the receipt executed by Rice, as the agent of Gilmore. But the court found as a fact that Rice did not have authority to bind Gilmore to such a settlement, and there was sufficient evidence to support that finding.

The principal contention in this appeal is that the trial court erred as a matter of law in allowing the additional compensation. Since the facts are undisputed, the controlling question becomes one of law, which may

be stated in this form: Is an employee who enters the service with the sight of only one eye entitled to recover for the loss of that eye the compensation allowed for a condition of total incapacity, as held by the trial court; or, is he limited, as held by the Board, to the specific compensation prescribed for the loss of the sight of an eye?

The measure of compensation which may be claimed in cases of this character is governed entirely by the terms of the statute (Vernon's Ann. Civ. St. Supp. 1918). The following are some of its appropriate provisions:

"5246—18. While the incapacity for work resulting from injury is total, the association shall pay the injured employé a weekly compensation equal to sixty per cent. of his average weekly wages, but not more than $15.00 nor less than $5.00, and in no case shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of the injury.

"5246—19. While the incapacity for work resulting from the injury is partial, the association shall pay the injured employé a weekly compensation equal to sixty per cent. of the difference between his average weekly wages before the injury and his average weekly wage-earning capacity during the existence of such partial incapacity, but in no case more than $15.00 per week; and the period covered by such compensation to be in no case greater than three hundred weeks; provided that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one (401) weeks from the date of the injury.

"5246—20. In cases of the following injuries, the incapacity shall conclusively be held to be total and permanent, to wit:

"(1) The total and permanent loss of the sight in both eyes.

"(2) The loss of both feet at or above the ankle.

"(3) The loss of both hands at or above the wrist.

"(4) A similar loss of one hand and one foot.

"(5) An injury to the spine resulting in permanent and complete paralysis of both arms or both legs or of one arm and one leg.

"(6) An injury to the skull resulting in incurable insanity or imbecility.

"In any of the above-enumerated cases it shall be considered that the total loss of the use of a member shall be equivalent to and draw the same compensation during the time of such total loss of the use thereof as for the total and permanent loss of such member.

"The above enumeration is not to be taken as exclusive, but in all other cases the burden of proof shall be on the claimant to prove that his injuries have resulted in permanent, total incapacity.

"5246—21. For the injuries enumerated in the following schedule the employé shall receive in lieu of all other compensation except medical aid, hospital services and medicines as elsewhere herein provided, a weekly compensation equal to sixty per cent. of the average weekly wages of such employé, but not less than $5.00 per week nor exceeding $15.00 per week, for the respective periods stated herein,

to wit: * * * For the loss of a leg at or above the knee 60 per cent. of the average weekly wages during 200 weeks. For the total and permanent loss of the sight of one eye 60 per cent. of the average weekly wages during 100 weeks. In the foregoing enumerated cases of permanent, partial incapacity, it shall be considered that the permanent loss of the use of a member shall be equivalent to and draw the same compensation as the loss of that member."

There would be little difficulty in affirming this judgment but for the language of article 5246—24, which is as follows:

"If an employé who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employé had there been no previous injury."

That article is relied on by the appellant as supporting the ruling of the Industrial Accident Board, and as grounds for the reversal of the judgment of the trial court. It is claimed that the facts of this case bring it within the very terms of this article of the statute. It is insisted that Gilmore had suffered a previous injury, the loss of an eye, and then suffered a subsequent injury, the loss of the other eye, which produced a condition of incapacity to which both injuries contributed; therefore the association should be held responsible for only such compensation as the last injury would have authorized, had there been no previous loss of the sight of the other eye. In other words, an employee who by the loss of his only eye is rendered totally blind is, under the present statute, entitled to no more compensation than may be claimed by one who loses one of two good eyes. The following cases are cited as sustaining that proposition: State ex rel. Garwin v. District Court et al., 129 Minn. 156, 151 N. W. 910; State Industrial Commission v. Newman. 222 N. Y. 363, 118 N. E. 794; Weaver v. Maxwell Motor Co., 186 Mich. 588, 152 N. W. 993, L. R. A. 1916B, 1276, Ann. Cas. 1917E, 238. The first case is from Minnesota, the second from New York, and the third from Michigan. A majority of this court concur in that construction of our statute holding that article 5246—24 absolutely controls the decision of this case, and they therefore conclude that the judgment appealed from should be reversed and judgment here rendered sustaining the ruling of the Board. The appeal will therefore be disposed of in accordance with that holding. But the writer wishes to state the grounds upon which he dissents from that conclusion.

The construction adopted is plausible; the facts are undisputed, and the language of article 5246—24, when read without reference to other portions of the act, seems plain and unambiguous. But a practical application of that construction to individual cases leads to results so manifestly repugnant to the purposes of a compensation law that its correctness may well be doubted. To illustrate: Two men enter the service of an employer at the same time; one in normal condition, with two good eyes; the other in an abnormal condition, with only one good eye. Both are later injured at the same time and by the same accident, and as a result each loses an eye; one is rendered totally blind, while the power of the other to see is impaired but little. Certainly a law designed to provide compensation even approximately commensurate with the diminished capacity would not prescribe the same allowance to both victims. The situation of men so injured is not one in which the consequences to each might be the same, but one in which the consequences are always different. Or, to present another possible condition, equally as repugnant and none the less probable, let us suppose that both of the injured men are rendered totally blind, but under the ruling adopted by the Accident Board the man who became blind by the loss of only one eye would receive 60 per cent. of his average weekly wages for only 100 weeks, while the man who was rendered blind by the loss of both eyes could claim similar compensation for a period of 401 weeks—a difference of 301 weeks, or four times more—for precisely the same condition of incapacity. Nothing less than language which can have no other meaning should be interpreted as requiring such gross inequality of compensation. The Workmen's Compensation Law was designed to do what its name indicates—provide a just and reasonable compensation for the loss of earning capacity by injured workmen. It is made plain that the lawmakers undertook to regulate and grade allowances according to the extent of the incapacity caused by the injury. In the light of that manifest purpose article 5246—24 could not logically mean to do more than to limit liability for compensation to the direct results of the injury inflicted, and to exclude the results of any prior injury. The insurer takes an employee in the condition in which he enters the service, and insures him against the loss of that capacity which he carries into the service. If the workman has but one eye, he is entitled to protection against all the impairment which the loss of the sight of that only eye would cause. To require that much of the insurer is not unfair; to require less than that would be manifestly unjust to the workman. In re J. & P. Coats Co., 41 R. I. 289, 103 Atl. 833, and cases cited.

When Gilmore entered the service of his employer he had but one sound eye, and the employer and the insurer must have known

this. He was, presumably, paid the wages which a man in that impaired condition was worth in that service. When by the last injury Gilmore lost all that remained of his normal capacity after the prior injury, he fell within the class designated by the statute as the "totally incapacitated," and was entitled to receive the compensation allowed for that class. This was 60 per cent. of his weekly wages for a period not exceeding 401 weeks. If his wages had been graded according to his previously impaired capacity his total-compensation would be correspondingly less. If Gilmore came within the class designated by law as the "totally incapacitated," then he cannot be denied the compensation prescribed for that class without ignoring the plain provisions of article 5246—18. Nowhere else can we look for the legal measure of his allowance. That the specific allowance for 100 weeks for the loss of the sight of one eye was intended only for employees in the normal possession of two sound eyes before the injury is apparent from the limited period during which the allowance may continue—100 weeks. If it were construed otherwise some exceedingly grotesque results would follow. To illustrate: For the loss of both eyes at the same time the injured employee may claim an allowance for as long as 401 weeks; but if the same loss occurred as the result of accidents happening at different times he could claim an allowance for an aggregate period of only 200 weeks. That would be true, notwithstanding the same degree of total incapacity resulted in both cases. That this specific allowance was intended to fix the compensation for the loss of one of two sound eyes, producing only partial incapacity, is also made apparent by the language which immediately follows that provision of the same article.

When we come to inquire into the direct and sole consequences of this last injury to Gilmore, we find that he was reduced from a previous state of partial incapacity to one of permanent total incapacity. That condition was shown not only by the fact that he was blind, but by the positive testimony of witnesses that he was now unable to earn a living in any kind of employment. Let us assume that Gilmore for the previous injury had received the statutory compensation for 100 weeks, and that he is now allowed compensation during 400 weeks for the present injury; is he thereby enabled to collect more than if he had lost both eyes at the same time? After the first injury his earning capacity was, according to the statutory estimate, diminished one-fourth. His weekly wages were doubtless reduced accordingly, so that at the time of his last injury he was receiving as wages only three-fourths of his normal earning capacity. Sixty per cent. of

that reduced wage for 400 weeks, when added to the 100 weeks of the previous allowance, will no more than equal 60 per cent. of the wages for the total loss of the normal capacity for a period of 400 weeks. Numerous cases are referred to L. R. A. 1916A, p. 23 to 272. The ruling in the Minnesota case relied on by the appellant is based upon a statute somewhat different and more explicit than ours.

While I think this case should be affirmed, the majority of this court have decided otherwise. The judgment of the trial court will therefore be reversed, and judgment here rendered for the appellant.

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes