**TRADERS & GENERAL INS. CO. v. GIBBS.**

No. 15130.

Court of Civil Appeals of Texas.
Fort Worth.

April 7, 1950.

Rehearing Denied May 5, 1950.

---

Dan P. Johnston, of Dallas, Donald & Donald, of Bowie, Cyrus B. Frost, of Eastland, Turner & Seaberry and Virgil T. Seaberry, all of Eastland, for appellant.

Nelson, Montgomery & Robertson, and Ernest Robertson, all of Wichita Falls, for appellee.

HALL, Justice.

This compensation case was appealed by appellant Traders & General Insurance Company from a judgment rendered against it, by the district court of Montague County, for total and permanent disabilities awarded to appellee J. Z. Gibbs.

Appellee, as plaintiff, alleged and testified that during the month of October, 1948, while working on a derrick floor for his employer, Bass and Dillard, drilling contractors, in Montague County, Texas, an 850 pound joint of metal pipe fell and struck him on the head, fracturing his skull, that resulted in a head injury and caused stomach ulcers to develop, which required surgical operation. He also alleged that by such injuries he became totally and permanently disabled.

Appellant answered that it paid appellee $275 which was all he was entitled to, and for other defenses it alleged that plaintiff sustained an accidental specific injury, resulting in a total loss of sight in his left eye in 1923 and prior to the injury in question plaintiff sustained other injuries and diseases, including syphilis, which caused his disabilities.

Judgment of the trial court in favor of appellee is supported by the jury's answers to special issues submitted.

Appellant presents nineteen points of error, the first one reading as follows:

"Plaintiff having lost the sight in his left eye in a previous accident, which injury was a specific injury entitling him to definite sum of compensation, and which injury was a case of permanent partial disability, then plaintiff could not in law sustain total and permanent disability for a second accident."

We interpret appellant's contention in support of this point to be that when one has suffered a specific injury and has received compensation therefor, then by a second accident disconnected with the first that said person cannot in law suffer total and permanent disability; that the specific injury left appellee in a permanent status of partial disability by operation of law, therefore a later disconnected injury could do no more than partially disable appellee. This argument is based upon the theory that total and partial incapacity cannot concur; neither can permanent and temporary incapacity concur. Appellant cites for its authority the following: Texas Employers' Ins. Ass'n v. Crosby, Tex.Civ. App., 123 S.W.2d 743; Maryland Casualty Co. v. Gunter, Tex.Civ.App., 167 S.W.2d 545; Hartford Accident & Indemnity Co. v. Leigh, Tex.Civ.App., 57 S.W.2d 605; Traders & General Insurance Co. v. Watson, Tex.Civ.App., 131 S.W.2d 1103, error dismissed; R.C.S., art. 8306, secs. 12 and 12c, Vernon's Ann.Civ.St. art. 8306, §§ 12, 12c; Lumbermen's Reciprocal Association v. Gilmore, Tex.Civ.App., 258 S.W. 268.

Appellant admits it is the law that one may suffer a total disability by one injury and later may suffer a total disability by a second injury, but argues that such a legal result should not follow from a prior loss of a specific injury which by operation of law results in a permanent partial disability. In other words, it contends the specific injury having once been sustained, the employee can never recover from same, as, for instance, the loss of the sight of an eye. In such a case a party will never again be whole, thus it is impossible for him again to become totally and permanently disabled by a second disconnected injury.

Appellee submits testimony to the effect that by losing the sight of his left eye it did not in any way impair his ability to work. One witness, E. R. Phegley, testified he had worked with appellee for some six or seven years, that he did not know Gibbs had only one eye. Floyd Walker, another driller, testified substantially to the same state of facts.

We do not find a rule in the Gilmore case, supra, applicable here. In that case a man who was blind in one eye subsequently lost sight in the other eye through accidental injury. The court held that he was limited to recovery for loss of the specific member.

In construing section 12c, art. 8306, R.C.S., Vernon's Ann.Civ.St. art. 8306, § 12c, the court in the Leigh case, supra, announced the following rule: "Where the combined effect of the previous injury and the subsequent injury is to increase the incapacity of the employee beyond that which would have resulted from the subsequent injury alone, the statute would operate. But where, as in this case, the condition of incapacity following the subsequent injury is the same as it would have been had there been no previous injury, the statute has no application." [57 S.W.2d 607]

The trial court properly submitted to the jury in the instant case issues inquiring as to whether a part of appellee's permanent disability resulted from the eye injury in 1923, and if so, what percentage of his present disability resulted from said prior injury, to which the jury answered none. We find the jury's answer to these issues supported by the evidence. Appellant made no objection to the submission of same.

We do not find appellant's theory as set out in its point one is correct in the instant case where trier of the facts found appellee received general injuries which resulted in his total and permanent disability. See Gunter case, supra.

In the case of Texas Employers Insurance Association v. Pierson, Tex.Civ.App., 135 S.W.2d 550, 553, the employee received an injury to his eye during one month and later received a general injury to his body during the next succeeding month. The court held that he was entitled to recover compensation for both injuries even though he was suing for them in the same case and that section 12c did not apply. The court stated: "It will be noted also that one of the injuries, that to his eye, was specific in its nature, and the other, that to his chest, was general in its nature. The question here presented, therefore, is whether or not it is permissible under our practice to submit two injuries, one specific and the other general, as a unit in a joint incapacity and permit a single recovery thereon. * * * Under the provisions of the statute and the holdings of our courts, the injured employee is entitled to recover for the loss of the sight of his eye regardless of whether or not such loss contributes to his incapacity to perform labor. * * * The first injury did not totally incapacitate appellee to perform labor. The record shows he continued to labor until several days after the second injury. He was, therefore, still an employee of the smelting company, and covered by the policy of compensation insurance issued by appellant the same as he would have been if he had not received the injury to his eye." The case was reversed because of the trial court's having erroneously submitted the two injuries jointly, but the facts are somewhat analogous to the case at bar.

We overrule appellant's point one.

Appellant's point two relates to its proposition that the jury's answer to the special issue hereinabove discussed, which, in substance, is that no part of appellee's incapacity was caused by a previous injury to his left eye in 1923, is not supported by the evidence and is contrary to the greater preponderance of the evidence. We have already stated that the evidence supports the jury's findings in answer to this issue. The testimony by appellee and his medical witnesses is full and complete to the effect that the 850 pound pipe, which was 38 feet to 40 feet long, struck appellee in the head and rendered him unconscious for several days, that he was bleeding about the head, nose, mouth and right ear and appeared to be dead for a short time

after the injury. He remained in the Bowie hospital for a period of three days; he was taken from there to the General Hospital in Wichita Falls, where X-ray pictures revealed a fracture of the skull extending to the outer and inner layer of the bone structure of the skull. He remained in said hospital eight days and following that he was confined to his bed for approximately seven weeks; and then he was still weak, dizzy and could do no work; that stomach trouble developed, which necessitated an operation for ulcers and that such ulcers were directly caused by the injury in question. One doctor testified that due to his skull fracture which X-ray pictures showed and due to the blood which trickled from appellee's right ear, that in his mind appellee sustained a basal skull fracture.

■ Without enumerating additional testimony, we find the same is ample to support the court's judgment.

Appellant's points three and four relate to error of the trial court in refusing to submit to the jury the following special issues:

"What percentage, if any, of plaintiff's present disability, if any, do you find from a preponderance of the evidence to have resulted naturally and solely from the injury to plaintiff's left eye in 1923?

"Do you find from a preponderance of the evidence that plaintiff's condition of incapacity, if any, was caused solely from the head injury received on October 3, 1948, and those infections naturally resulting therefrom?"

■ The trial court submitted other defensive issues, which with the jury's answers thereto were to the effect that appellee's incapacity was not due solely to syphilis, nor to the combined effect of syphilis and gonorrhea; that such incapacity to labor was not caused by an injury to his left eye in 1923, neither was such incapacity to labor caused by an injury to his hand or fingers in the year 1938, nor was such incapacity to labor caused by an injury to his instep in the year 1944; that his stomach ulcers were the natural result of the injury which he received in question

on October 3, 1948. Appellant made no objection to such issues. We find that the trial court submitted the defensive theories to which appellant was entitled and that all of such defensive elements were submitted as raised by its points three and four, and we overrule them.

Appellant's point five is as follows:

"The jury was guilty of misconduct so serious as to deprive the defendant of its right to a trial according to the law. Some of the jurors told the others that total disability meant disability to perform oil field work such as the plaintiff had been doing before the accident. The proper test is whether the injured person is disqualified from performing the usual tasks of a workman in such a way as to procure and retain employment."

■ The trial court heard testimony upon appellant's motion for new trial, consisting of ninety-three pages. After reading and considering it in connection with appellant's point five, we have come to the conclusion that the trial court did not abuse its discretion in overruling same.

Appellant relies in the main upon the testimony of juror Jess H. Whatley for reversal.

Special issue four inquired of the jury as to whether the injury sustained by appellee resulted in total incapacity. Special issue five related as to whether or not said total incapacity was permanent. Special issue six inquired whether or not such total incapacity to labor, if any, was temporary.

Said juror on direct examination testified as follows:

"Q. After you had had that vote on whether to find Mr. Gibbs totally and permanently disabled or not, did anyone make any remark in your presence about what he knew a man had to do in order to get a job in the oil field? If so, who was it, and what did he say? A. I don't think so.

\* \* \* \* \* \*

"Q. May I ask this question. Did you hear any juror make any statement in reference to what he knew about a man having to do certain kind of work in order to

get a job in the oil field? A. I don't recall that.

"Q. Was there any discussion in your presence before you made the change as to what it took to make a man totally disabled? Answer, Yes, or No? A. Yes, sir.

"Q. What, if anything, did that person say in reference to what he knew about what a man had to do? A. The discussion was made that if this total disability was for oil field work only.

"Q. What did the man say he knew was the fact in reference to that? A. He said it was.

"Q. After he made that statement did you then change your vote? A. Yes, sir.

"Q. Was that statement by him one of the reasons why you changed your vote? A. Yes, sir, not by him but by the discussion by the entire jury.

"Q. Did that happen before you changed your vote? A. Yes, sir.

"Q. When you took this final vote tell the Court just what you agreed to do after you had voted to find him totally and permanently disabled tell the Court what the jury did? A. We agreed to change the answers to the questions accordingly.

\* \* \* \* \* \*

"Q. If the agreement had not been made and these statements had not been made in your presence would you have ever voted 'Yes?' A. After they interpreted the charge as being for oil field work only I voted 'Yes.'

"Q. If that statement had not been made would you have ever changed? A. No."

On cross-examination the witness testified, among other things, as follows:

"Q. Did you vote the way the issues were finally answered? A. Yes, sir.

"Q. Was it your opinion that the way you voted was shown by the evidence; in other words, you voted from the evidence? A. Yes, sir."

Other jurors testified in substance that a free discussion was had in the jury room relative to what extent the injury would cause total and permanent disability, relative to a laborer doing different kinds of work, and some comparisons were made relative to whether appellee was able to do light labor on a farm or manage a farm, but no other juror remembered the conversation or statements having been made as outlined by the juror Whatley. No doubt the jurors had in mind the extent of time which appellee had worked in an oil field. They had a right to weigh the evidence before them to determine as to whether or not the disability disqualified appellee from performing the usual task of a workman in such a way as to procure and retain employment. When the testimony of jurors is conflicting, it is for the trier of the facts to determine whether or not there was jury misconduct.

Our Supreme Court held in the case of Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 64, in substance, that jurors while weighing evidence have a right to use their common knowledge and experience in life, they have a right to indulge in a free discussion of all the evidence, and, as in the case at bar, "when all conflicts in the testimony are resolved in favor of the verdict, it will be found that the statements made by the jurors amounted to nothing more than a layman's discussion of the weight to be given to the evidence before the jury." As stated in the case of Bauguss v. Bauguss, Tex.Civ.App., 186 S.W.2d 384, 387, cited by appellee, "Under Rule 327 the burden was upon appellants not only to prove misconduct within the meaning of the law, but that same was material and probably resulted in injury to them. \* \* \*"

In the case at bar the juror witness admitted that appellee was totally disabled, he did not care to change his vote on that point, he thought in the beginning before he changed his mind otherwise that such total disability was to an extent of eighty-five per cent.

Under all the testimony in the case we find appellant has not shown jury misconduct to extent of requiring a reversal.

Appellant's point six: "The Court erred in instructing the jury, over defendant's

objections, to reconcile their findings by commenting upon the issues and definitions and the weight of the evidence."

The trial court finding a conflict in the jury's answers to its special issues gave the following additional charge:

"You have answered special issue No. 4 that the plaintiff has been totally incapacitated to labor, and you have answered special issue No. 5 that said total incapacity to labor is permanent; however, you have answered special issue No. 8 that plaintiff suffered a partial incapacity to labor and special issue No. 9 that said partial incapacity to labor is permanent, and you have answered special issue No. 13 that said partial incapacity is 85 per cent.

"You are instructed that a person can not be in law totally and partially incapacitated at the same time. If the plaintiff was totally and permanently incapacitated to labor he could not be partially incapacitated to any extent for any period of time. Stating it the other way (meaning the same thing), if the plaintiff was partially incapacitated to any extent for any period of time, he cannot be totally incapacitated for such period of time.

"The court does not desire to indicate how you shall answer the special issues, but only to point out the conflict in your answers; so, as stated in the main charge, you must answer the special issues as you find the facts to be and you are entirely free to make any answer to any special issue in the court's charge as you may find from a preponderance of the evidence, and you will return to your room and reconcile your answers."

■ We do not find this charge susceptible to the objection raised in appellant's point six and overrule same. Federal Underwriters Exchange v. Craighead, Tex.Civ.App., 168 S.W.2d 699; Traders & General Insurance Co. v. Carlisle, 138 Tex. 523, 161 S.W.2d 484.

Appellant's point seven: "The evidence as a whole was insufficient to sustain a finding of total and permanent disability, and the finding of total and permanent disability was so contrary to a great preponderance of the evidence as manifestly to have been the result of bias and prejudice."

The evidence which we discussed under appellant's point two is sufficient to support the trial court's judgment on permanent disability, hence, we overrule this point.

Appellant's points eight, nine, ten and eleven, complaining of the submission of certain special issues, raise questions which appear to us to be fully settled by the opinion in Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280, and the points are overruled under authority of that case.

■ Appellant's point twelve complains of the trial court's allowing appellee's medical expert to testify in substance that the lick on appellee's head indirectly caused ulcers of the stomach because of appellee's anxiety concerning such injury and financial worry. We overrule this contention. See Hood v. Texas Indemnity Insurance Co., 146 Tex. 522, 209 S.W.2d 345.

■ Appellant's point thirteen cites error of the trial court in permitting appellee's wife to testify that since the injury there has been a change in personality of her husband. We overrule this contention. See 19 Tex.Jur., p. 354, sec. 231; Shuffield v. Taylor, 125 Tex. 601, 83 S.W.2d 955.

■ Appellant's points fourteen and fifteen cite error of the court in overruling its objections to the charge because the same submitted issues of permanent or temporary disability and total or partial disability in several complicated and independent questions. We overrule this contention.

■ Appellant's sixteenth point cites as error the trial court's submission of special issue No. 6 as being conditional. This issue embraced the question as to whether appellee's total disability was temporary. The transcript reveals that the court submitted and appellant received a jury finding on an unconditional submission of temporary total disability. See Southern Underwriters v. Boswell, supra.

Appellant's points seventeen and eighteen are directed to error of the trial court in rendering judgment for appellee because of insufficiency of the evidence on certain points, which we overrule.

Appellant's point nineteen refers to error of the trial court in overruling its exception to the charge wherein it permitted the jury to allow compensation for a condition that may have arisen from admitted diseases from which no connection is shown to the injury. We have heretofore answered this question against appellant based upon issues and the jury's answers thereto.

Having studied and considered appellant's nineteen points of error and reviewing them in the light most favorable to the verdict, we have come to the conclusion that all of them should be overruled and the trial court's judgment affirmed.