**AMERICAN GENERAL INS. CO.**

**v.**

**BAILEY.**

No. 12627.

Court of Civil Appeals of Texas.

Galveston.

May 6, 1954.

Rehearing Denied June 3, 1954.

Vinson, Elkins, Weems & Searls, B. Jeff Crane, Jr., and L. J. Clayton, Houston, for appellant.

John L. Hill and W. James Kronzer, Houston, and Hill, Brown, Kronzer & Abraham, Houston, of counsel, for appellee.

HAMBLEN, Chief Justice.

This appeal is from a judgment of the district court of Harris County in which appellee recovered under the Workmen's Compensation Statutes of Texas, Vernon's Ann.Civ.St. art. 8306 et seq., as for fifty per cent permanent partial disability because of an injury allegedly received by him on October 31, 1951. At the time of the alleged injury, appellee and another workman were at opposite ends of a movable scaffold which was suspended by cables from the roof of a building then being constructed. Appellee and his co-worker were in the process of lowering such scaffold into working position. While so engaged, and due to some failure of the mechanism by which the scaffold was suspended, the end opposite that on which appellee was situated, gave way, and appellee's co-worker fell to his death eight stories below. Appellee managed to cling to the scaffold, or the remaining cable by which it was suspended, and to jump therefrom to the building. As a result of this incident, appellee suffered a.

bruise on his leg, and a "cable burn." All of the evidence in the record requires the conclusion that such bruise and cable burn were minor in nature, were completely healed within a short time after the incident, and did not cause or contribute to any disability or incapacity on the part of appellee. Appellee bases his right to an affirmance of the judgment rendered upon the allegation, which appears to be amply supported by the evidence, that in addition to the described physical injuries, he sustained a severe fright which damaged his entire nervous system and resulted in a severe anxiety state. Appellee contends, and the proof supports his contention, that as a result of the fright occasioned by witnessing his co-worker's horrible death, and the realization of his own narrow escape from a similar fate, he is extremely nervous and apprehensive whenever he is off of the ground, and that he emotionally "freezes" on scaffolds, beams, or other parts of building structures, and as a consequence, is unable to perform all of the duties of a qualified iron worker.

The judgment rendered in appellee's favor is attacked by appellant in twenty nine points of error. Points one to seven are based upon the proposition that the facts as above outlined fail to support the necessary finding that appellee received a personal injury, as that term is defined by the Workmen's Compensation Statutes of the State of Texas. Appellant's remaining points are directed to the insufficiency of the evidence to support the jury's finding that appellee suffered any partial incapacity or disability, and to the error of the trial court in submitting to the jury certain issues inquiring as to the percentage of disability suffered by appellee, rather than appellant's requested issues inquiring as to appellee's average weekly wage earning capacity during partial disability. This Court has carefully examined the record in this case, and the briefs and arguments of counsel together with the authorities cited in support thereof. After doing so, we feel compelled to the conclusion that appellant's points one to seven, inclusive, are well taken and must be sustained. This conclusion re-

quires that the judgment of the trial court be reversed and rendered, and makes it unnecessary to consider appellant's remaining points of error.

The decision of the question here involved has been most difficult. The precise question has not passed upon by any appellate court in Texas. In other jurisdictions wherein the applicable statutes are sufficiently similar to those of this State to afford an analogy, the decisions are conflicting. Before discussing the reasoning upon which our conclusion is based, the factual basis should be stated. The following findings appear inescapable from the record presented, and to be in large part agreed upon by the litigants.

Appellee's condition is functional rather than organic. That is to say, any incapacity of appellee can be demonstrated or proven only by the fact that his mind or nervous system does not function normally, and cannot be demonstrated or proven by any cellular or organic condition of any organ or part of his body. The objective symptoms upon which medical diagnosis is based, are limited to those available for the diagnosis of nervous or mental functional disorders. His condition seems clearly to have been caused by the incident described. The only injuries suffered by appellee which may be described as physical from the cellular or organic standpoint, were the bruise to his leg and the cable burn on his arm, neither of which caused or in any degree contributed to his nervous or mental condition. There is no evidence that his nervous or mental condition has resulted in or caused any condition which may be described as physical from the cellular or organic standpoint. His condition is real and not simulated, and there is no proof in the record that it persists solely or even partially because of the existence of a claim under the Workmen's Compensation Statutes.

The medical witnesses who testified in the trial court variously described the appellee's condition as a "mental disturbance," an "anxiety state," and a "nervous illness." All of the medical testimony may be summed up by saying that appellee

suffers from what is usually described as a neurosis which resulted from the fright occasioned by the collapse of the scaffold in the manner described. The legal question presented is whether such a condition is compensable under the Workmen's Compensation Law of the State of Texas.

That law provides compensation for employees who sustain disabling injuries in the course of their employment. Article 8309, Sec. 1, defines "injury" as follows: "The terms 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom."

The Supreme Court of Texas has held, in the case of Hood v. Texas Indemnity Insurance Co., 146 Tex. 522, 209 S.W.2d 345, that a neurosis which is caused by an injury is compensable under our statute. The Ft. Worth Court of Civil Appeals has held, in Traders & General Ins. Co. v. Gibbs, 229 S.W.2d 410, that a physical condition produced by a mental anxiety, which was in turn, caused by a physical injury, is compensable. In both decisions, it seems quite apparent that the court treated the neurosis as a disease resulting from an injury, and not as an injury in itself. And in both cases, and particularly in the Hood case, compensation for disability resulting from the neurosis was allowed because, and as we view it, only because, the neurosis resulted from an injury.

In Hood v. Texas Indemnity Insurance Co. the employee sustained an injury to his left foot and right elbow which totally disabled him for a period of four weeks. By that time he had developed, as a proximate result of such injuries, a neurosis by reason of which he was totally disabled up to the date of judgment, and would suffer 75% disability for six months thereafter. The court held that a neurosis of the character of that from which the employee suffered is a disease, and, if it results from a physical injury, is compensable. Judge Hickman, who wrote the opinion of the court,

wrote that the definition of "injury", as given above, should be liberally construed, and that the fact that the disability of the employee in that case resulted from a neurosis did not prevent the recovery of compensation *when the evidence clearly warranted the finding that the neurosis resulted from a physical injury.* (Emphasis added). Judge Smedley wrote a dissenting opinion, in which two members of the court joined. The basis of the dissent was twofold. The record contained evidence based upon which the trial court found as a fact that neurosis which caused the claimant's disability persisted solely because of the existence of a claim under the Workmen's Compensation Act. Such a neurosis, according to the minority opinion, is not a true neurosis, and should not be compensable, even if it directly resulted from physical injury. The present record supports the conclusion that the appellee's neurosis is a true neurosis, and not that which is referred to as a "compensation neurosis", so that the first ground of the dissent in the Hood case has no application here. However, the second ground of the dissent is based upon the insufficiency of the evidence to support the conclusion that the neurosis, even if of the compensable type, was the direct result of the physical injury. It therefore appears that the entire court concurred in the view that a neurosis, to be compensable, must result directly from physical injury. The dissent, in so far as it sheds light upon the present problem, was the result of a different view taken of the effect of the evidence in so far as it supported the finding which both the majority and minority opinion hold to be necessary.

Appellee, in his brief, strongly contends that the neurosis from which he suffers is an "injury", within the definition quoted. We have carefully examined the medical testimony offered upon the trial of this case. The testimony of two physicians was offered. Dr. James Albert Brown, whose testimony was offered by appellee, testified at length. He described appellee's condition as a "functional disturbance" and as a "nervous illness". We consider the follow-

ing excerpt from his testimony to be material:

"Q. Now, as I understand you then, what you have been testifying about here is a psychic trauma? A. Psychic trauma, yes.

"Q. And that is something that interferes with the functioning of the nervous system rather than something that damages the physical structure of the body? A. That is correct."

From the testimony of Dr. John E. Skogland, offered by appellant, the following is material:

"Q. All right, sir. I would like to ask you another question or two about that and that will be all, Doctor. Is this anxiety state, I believe that is what you call it, something that manifests itself in any change in the condition of the brain or nervous system physically? Is there anything you can see there or find if you examine the man internally? A. No.

"Q. I am sure I am clumsy about my question, Doctor, because I am not familiar with that field, but I will try to boil it down to this. If you had some way of getting inside the man's body now, and examining his brain, and his nervous system, the nerves and whatever goes with it, would you find any change in the physical make-up of that structure since the time of this occurrence that he told you about in October of 1951? A. No. He would be perfectly normal."

█ Webster's Unabridged Dictionary defines "neurosis" as "A functional nervous disorder without demonstrable physical lesion." "Physical", is defined as "Of or pertaining to the body as contrasted with the mind." As antonyms to "physical", the same authority uses the words "mental" and "emotional". The medical proof in the record, significant portions of which have been quoted, lead inescapably to the conclusion that appellee's condition is mental rather than physical. Whether it be termed an "anxiety state", a "nervous ill-ness", or a "neurosis", it is equally inescapable that it is a disease, and not an injury. As such, under any reasonable construction of the word "injury" as used in the Workmen's Compensation Act, as well as under the interpretation of that Act by the Supreme Court, it is compensable only if it is the direct result of physical injury. There is no evidence in the record upon which to base a finding that it did so result. On the contrary, the evidence is conclusive, and it appears from the argument made by appellee to be conceded, that the condition results solely from the emotional shock and fright suffered when the scaffold collapsed, as described.

█ In view of the real nature of appellee's illness, and the evidentiary support for the jury's finding of disability resulting therefrom, we have, in compliance with the Supreme Court's direction that the Workmen's Compensation Act be liberally construed, diligently undertaken to discern an intention on the part of the Legislature to provide compensation for such disability as that from which appellee suffers. The authorities cited by the litigants in support of their respective contentions, other than the two to which we have referred, are not factually analogous, and do not deal with the problem that is here presented; and thus have been of little assistance. Appellee's right to compensation must arise solely from the applicable provisions of the Workmen's Compensation Act. Our function is limited to construing the law to carry out the discernable intention of the Legislature. The construction for which appellee contends is not consonant with the law as written. For that reason we are compelled to hold that the judgment of the trial court must be reversed, and judgment here rendered in accordance with this opinion.

Reversed and rendered.

GRAVES, J., dissenting on the ground that there was medical testimony that the appellee's nervous system would be permanently injured.