/s/ Ben H. Cantrell
BEN H. CANTRELL,
JUDGE

**Ben L. O'DELL, Plaintiff–Appellant,**

**v.**

**The BOARD OF COMMISSIONERS OF the CITY OF JOHNSON CITY, Tennessee, To Wit: Jeff W. Anderson, Charles PC Snapp, Dan Hammer, Joseph D. "Dan" Mahoney and Micki Carter, Defendants–Appellees,**

**v.**

**C.C. MARSHALL and wife Alice Marshall, and W. Richard McGowan and wife, Vickie McGowan, Intervening Petitioners.**

Court of Appeals of Tennessee,
Eastern Section.

June 2, 1995.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 6, 1995.

David H. Hornik, Nashville, for Appellant.

Erick Herrin, Johnson City, for Appellee Board of Commissioners.

Earl R. Booze, Johnson City, for C.C. Marshall and wife Alice Marshall.

Stephen E. Fox, Johnson City, for W. Richard McGowan and wife Vickie McGowan.

### OPINION

GODDARD, Presiding Judge (Eastern Section).

Ben L. O'Dell, a property owner in the City of Johnson City, Tennessee, sues the Board of Commissioners of the City of Johnson City seeking to have an agreed order entered in a previous suit against the Board, as well as a City Ordinance passed pursuant to the agreed order declared void. The agreed order and Ordinance provided that the City would re-zone certain property owned by Mr. O'Dell from R–5, which is single-family residential, to B–4, which is arterial business. His complaint is premised on the theory that the agreed order constituted "impermissible contract zoning."

■ The Trial Judge determined that under the facts adduced the agreed order did not constitute illegal contract zoning. We concur in his findings of fact and conclusions of law, which are made an appendix to this opinion.

Before concluding, we make certain other observations. First, we question whether—even if Mr. O'Dell is correct that this is contract zoning—he, being a party to the contract, is in a position to raise the issue, although certainly other landowners would be. In having our doubts, we are cognizant of the case of *City of Knoxville v. Ambrister,* 196 Tenn. 1, 263 S.W.2d 528 (1953), which appears to have allowed a party to such a contract attack it. We do note, however, that *Ambrister* and *Haymon,* cited in the Chancellor's opinion, which found impermissible contract zoning, cite with approval an earlier case, *Osborne v. Allen,* 143 Tenn. 343, 226 S.W. 221 (1920), which, although not a zoning case, rejected a suit by a party to an illegal contract on the theory of unclean hands.

■ Finally, we observe that although the instrument in the underlying case was styled an agreed order, the Trial Court in that case made the following specific finding of fact:

That the Court has considered the plan herein adopted and finds that the plan is reasonable and in the best interests of the public health, safety and welfare and in the best interests of the future development of the Petitioner's property as well as other real properties located along the easterly right-of-way line of North Roan Street between the T.V.A. Power Substation and Mountcastle Drive.

The foregoing finding negates any suggestion that the agreement was inimical to the public weal.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of costs below. Costs of appeal are adjudged against Mr. O'Dell and his surety.

McMURRAY and SUSANO, JJ., concur.

APPENDIX

IN THE LAW COURT
FOR WASHINGTON COUNTY
AT JOHNSON CITY, TENNESSEE

Ben L. O'Dell, Plaintiff,

vs.

The Board of Commissioners of the City of Johnson City, Tennessee, To–Wit: Jeff W. Anderson, Charles PC Snapp, Dan Hammer, Joseph D. "Dan" Mahoney and Micki Carter, Defendants.

Civil Action No. 15824

Filed 15 day of July 1994 at ——
9:00 o'clock A.M.
Don Squibb, Clerk

ORDER

This cause came on to be heard on Tuesday, the 24th day of May, 1994, and Wednesday, the 25th day of May, 1994, before The Honorable Thomas J. Seeley, Circuit Judge.

Upon the pleadings, the issues joined, and the record as a whole, the Court did proceed to receive evidence in the cause both upon the personal appearance of witnesses and direct video deposition.

At the conclusion of the hearing to include the argument of counsel on the Motions to Dismiss, the Court was of the following Opinion:

*THE COURT: All right, this is a case in which Mr. O'Dell as Plaintiff is seeking a declaratory judgment that the Order of the Court in Case Number 6552 on the docket of this court, sometimes referred to as O'Dell number one in this case, and the ordinance arising therefrom, Ordinance 2299 of the City of Johnson City, are invalid on the basis that the Order itself was a product of illegal contract zoning; and therefore that Order should be set aside and the ordinance following that Order is likewise illegal, and that both are void. Defendants in this case deny that there was any illegal contract zoning. And further, defense say that the prior Order and ordinance following it can not be collaterally attacked in this case. And that further, any attack on the Order in Case Number 6552 is barred by the lapse of time.*

*Now, in trying to understand this case and the law that applies to the facts of this case, I looked at cases that have been mentioned, but principally I looked at The City of Knoxville v. Ambrister [196 Tenn. 1], 263 S.W.2d 528 (1953) and that's a Tennessee Supreme Court case; the case of Haymon v. City of Chattanooga, which was decided by the Court of Appeals, Eastern Section. That's cited in 513 S.W.2d 185, a 1973 case in which cert was denied by the Tennessee Supreme Court on February 4, 1974. I also relied on the Slip Opinion in the case of Benton v. City of Chattanooga[, 1988 WL 74608.] This was decided by the same Court of Appeals for the Eastern District of Tennessee on July 20, 1988. I likewise relied on Copeland v. City of Chattanooga, which was decided by the Court of Appeals for the Western Section sitting at Knoxville, cited at 866 S.W.2d 565, a 1993 case.*

*Now, without trying to quote too extensively, the Ambrister case and the Haymon case both involved dedications or restriction of use for a two hundred foot strip where the landowner was seeking to have his property rezoned so that the landowners could construct apartments. In Ambrister, the Court in looking at the facts of that case, said it was not possible to construe them, and they're talking about some letters that were put on the minutes of the City records, says "It's not possible to construe them as more than an agreement in consideration of amending the zoning ordinance to so dedicate Area Number 3, that's the two hundred foot buffer strip, at some future date, when and if the tract of which it is a part should be conveyed to a corporation for the development of the apartment building project contemplated. The Court said that contracts made for the purpose of unduly controlling or affecting official conduct of the exercise of legislative, administrative and judicial functions are plainly opposed to public policy. "They strike at the very foundations of government and it tends to destroy that confidence in the integrity*

and discretion of public action which is essential to the preservation of a civilized society. The principle is universal and is applied without any reference to the mere outward form and purpose of the alleged transaction."

The Court in Ambrister held that there was illegal contract zoning and did not allow the City of Knoxville to enforce the two hundred foot buffer strip. Now, Ambrister was followed by Haymon, and again that involved a two hundred wide buffer strip that the landowner was required to leave between adjacent properties and property where the landowner desired to construct apartments. Haymon cites Ambrister and further said "The same rule with respect to the validity of contracts to influence zoning seems to prevail in numerous other jurisdictions, the consensus being that contracts entered into in consideration of concessions made or to be made favoring the applicant are frowned upon as being against public policy which dictates that zoning is an instrument of public authority, to be used only for the common welfare of all the people." And the footnote to Haymon, the Court states "Nothing in this opinion is to be construed as holding that a planning commission without a covenant can not prescribe reasonable conditions for the benefit of the general public."

Benton involved a landowner who wanted the City to rezone his property from R-1 residential to C-2 commercial and there the City of Chattanooga did rezone the property subject to certain conditions it imposed upon the landowner. And it involved construction of an access drive to the subject property and the manner was to be designed and constructed and the fact that the landowner had to allow adjoining property owners access across this property to get to a main arterial street. Judge Sanders wrote this opinion and let me say that in this case, Benton is claiming several things. The two things that are important to us are that the plaintiff was claiming that the conditions required of him amounted to an unconstitutional

taking of his property and secondly, that it was impermissible or illegal contract zoning. Judge Sanders said "It is the use of governmental power as a bargaining chip that the Ambrister and Haymon courts criticized as the unsavory aspect of contract zoning. When a government negotiates in this manner it agrees to limit its right and duty to act on behalf of the public. Rezoning is approved not based upon the merit of the zone change request nor because it is in the public interest, but because a deal has been struck. On the other hand the mere unilateral imposition of conditions for public benefit is quite different. In contract zoning the government entity sacrifices its authority. In conditional zoning it exercises it." And in this case the Court said "By imposing conditions under which homesteads property could be rezoned, Chattanooga did not bargain away its authority, but rather exercised it for the public safety reasons." And the Court went on there to discuss the conditions that were imposed upon the landowner and the testimony of various witnesses to the effect that those conditions were reasonable and were required for traffic and safety considerations and in general for the public welfare. The Court in its findings said as follows: "The proof shows no evidence of a bilateral agreement. Homestead followed customary procedure in an attempt to have its property rezoned. There is no evidence of negotiations between the parties. There is no quid pro quo. There are only unilateral conditions requiring that necessary improvements be made." The Court there found there was no illegal contract zoning. Found that the conditions that were imposed were reasonable. Further found that there was no taking.

Now, in Copeland v. City of Chattanooga, the landowner was seeking to have his property rezoned again from residential to commercial usage. The City did rezone the property a C-2 zone, but again placed certain conditions with respect to allowing the change in zoning. In this case the City required that the landowner dedicate a twelve foot right-of-way. In Copeland the Court held that it was not a taking and

that the condition imposed upon the landowner was reasonable. In discussing the reasonableness of the condition, the Court said "Zoning is a legislative matter and as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion and in cases where the validity of a zoning ordinance is fairly debatable, the Court can not substitute its judgment for that of the legislative authority. If there's a rational or justifiable basis for the enactment and it does not violate any state statute or positive Constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination. In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment invalid unless the enactment in whole or in relation to any particular property is shown to be clearly arbitrary, capricious or unreasonable, having no substantial relation to the public health, safety or welfare, or is plainly contrary to the zoning laws." The case went on to cite the Slip Opinion in Benton.

Now, looking at the proof in this case, and attempting to apply the law to it, the proof basically is that the City has a general scheme or concept of development for the North Roan Street area. That the westerly side of North Roan Street developed first in a commercial manner and has been followed later by development on the east side of North Roan Street in the area that we're discussing. Mr. Browning, who was Director of Public Planning for the City of Johnson City at that time, testified that the main considerations of the City with respect to the request of Mr. O'Dell for zoning was number one, to have a buffer zone between that property, if it were rezoned commercially, between that property and Mountcastle Hills. Secondly, to have an access road system which would parallel North Roan Street and attempt to remove some of the traffic from North Roan. And thirdly, to establish roads going into the area to be rezoned on the easterly side of North Roan which were perpendicular to North Roan Street but lined up with the existing Mall Entrance Road, Mockingbird Lane and Canary Street. Those were the goals of the City and consisted of those items the City wanted to have a general scheme of development for that area.

Mr. Browning testified that it was a fair statement that the Order maintained the integrity of the concept we were looking for. That concept basically is reflected in Exhibit 12, the drawing that was shown Mr. Browning.

Mr. Moody testified that even though there have been some modifications of the general scheme in the area where Taco Bell, Kentucky Fried Chicken, Grady's and Toys R Us have developed, that the general scheme has been followed. That instead of a sixty-foot public roadway to the rear, there is a sixty-foot public easement on that area that parallels North Roan Street and that the entrances and exits into that area are opposite the three streets that I mentioned. The buffer strip was apparently narrowed from forty feet to thirty-two feet, but there was vegetation required to be planted, a berm, and a solid fence that Mr. Moody testified was preferable to even additional area because it acted as a noise and trash barrier.

Now, with respect to contract zoning, in relying on much of the language in Ambrister and Haymon, and even to a greater extent to that in the Benton case, you have to look, I believe, at whether or not there were bilateral negotiations between Mr. O'Dell and the City of Johnson City resulting in an agreement, which consisted of mutual covenants; that is, mutual promises with consideration running to both parties from the other as opposed to the unilateral imposition of conditions by the City, which conditions were for the benefit of the general public as opposed to Mr. O'Dell as an individual.

Now, let's look at Mr. O'Dell's testimony as to what transpired on the court date in this case. Mr. O'Dell testified that Mr.

Browning was dictating all the terms. He said the attorneys basically were doing nothing. Browning brought up and insisted on the sixty-foot right of way. "I questioned it. Browning said flatly 'It's sixty feet on both sides.' Browning said he wanted a forty-foot buffer strip. I objected; but Browning insisted." What Mr. O'Dell said he wanted and what he had agreed to was a twelve foot buffer strip. "Mr. Browning further said 'There will be a forty foot buffer strip and a sixty foot right of way and you would be limited to one entrance.' " Mr. O'Dell's exact testimony was there was not a negotiation. There was a dictation. It was the City's opening and closing position that they wanted a sixty foot dedicated right of way, forty foot buffer zone, one entrance opposite Canary Street. Later in his testimony he said "There was not much of a negotiation, these were the terms dictated to me."

It's clear to the Court that there was no bilateral negotiation. There was no bargaining. The City put forth the conditions it said it had to have in its development of the general concept for that area and according to Mr. O'Dell's own testimony didn't budge one bit.

Therefore, under the authority of the cases mentioned, the Court can not find any illegal contract zoning. The City's imposition of conditions as a requirement of rezoning were reasonable and were a valid exercise of their police power for the good of the general public. The conditions imposed were to regulate traffic, was for the safety of the general public and was to provide a buffer zone adjacent to Mountcastle Hills Subdivision. All of these conditions are reasonable. And they're reasonable considerations of a zoning authority.

Based on Mr. O'Dell's own testimony there are no facts or law that supports his position that there was illegal contract zoning in this case. Having found that, there's no real reason for the Court to determine if a prior judgment in another case can be collaterally attacked in this case or wheth-

er or not this action is barred simply by virtue of passage of time. In the Andgar case I would note that that was an appeal directly from the agreed order involved and here that is not the case. It is a collateral attack in a separate case and it's a collateral attack on a judgment where certainly the Court did have subject matter jurisdiction. It had jurisdiction of the parties and there was no attack on that judgment or the ordinance arising out of that judgment for some ten years. It may well be that the Defendants are correct in their contentions that Mr. O'Dell's claim may be time barred and that there can not be a collateral attack after all this time, but the Court does not reach that decision, not having to make it, having found on the merits that there was no illegal contract zoning in this case.

I'll direct Mr. Herrin to draw up the Court's order. The Court is granting the Motion to Dismiss made by the Defendants in this cause. Tax costs to the Plaintiff.