Odis F. HAYMON and Clark W. Taylor, Complainants, Appellants,

v.

CITY OF CHATTANOOGA et al.

Court of Appeals of Tennessee, Eastern Section.

Nov. 23, 1973.

Certiorari Denied by Supreme Court Feb. 4, 1974.

Shattuck & Payne, Chattanooga, for appellants.

Eugene N. Collins City Attorney, and Randall L. Nelson, Chattanooga, for appellees.

## OPINION

McAMIS, Special Judge.

Odis F. Haymon and Clark W. Taylor, owners of an apartment known as Chateau Royale, brought this action in the Chancery Court of Hamilton County against the City of Chattanooga, its Mayor and its Commissioners to enjoin the City from enforcing a stop-work order against the construction of twenty-eight apartments which complainants were in the process of adding to the existing apartment.

Defendants answered the bill asserting that at a time when the land in question was zoned R-2 complainants' predecessors in title appeared before the Board of Zoning Appeals and entered into an agreement to execute a covenant, to run for a period of 25 years, that, if the Board would rezone the property R-3, a buffer zone of vacant property 200 feet in width would be left between the apartment and the nearest property owner; that this covenant was to run with the land and bind subsequent owners not to build apartments on the buffer strip; that such a covenant was duly executed and placed of record in the Office of the Register of Deeds for Hamilton County and has ever since remained of record and that in 1963, acting on this covenant, the Board, over the objection of neighboring property owners, after two hearings, re-zoned the property R-3.

Nothing further was done to develop the property until after it was purchased by complainants. Some time prior to 1971, complainants constructed one hundred apartments on the land, leaving intact and unimproved the buffer strip 200 feet in width.

On May 25, 1971, complainants had the title searched professionally but the covenant for some reason was not discovered. Ignoring and possibly being ignorant of the covenant except that they were advised by the building inspector that there might be such a covenant in existence, complainants made application to the Board to reduce the buffer strip to 100 feet to permit the construction of twenty-eight additional apartments. A new Board in the meantime having assumed office and being without knowledge of the covenant, passed an amendment to zoning ordinance reducing the buffer zone from 200 feet to 100 feet and the building inspector thereupon issued a building permit to effectuate the amendment.

Complainants then had plans drawn and entered into a contract for the construction of the new apartments and claim to have expended in drawing plans and laying foundations for the apartments approximately $35,000.00. At that juncture, apparently being advised of the covenant and its then current violation, the City revoked the building permit, precipitating the filing of this action.

The Chancellor in a well reasoned opinion concluded that both the covenant and the ordinance passed in consideration thereof are void as a matter of law and that neither can be enforced. On this subject the Chancellor reasoned:

"The City, by entering into the agreement with the covenantors to rezone in consideration of the Covenant, should the Court uphold the Covenant, has placed itself in an untenable position of, on the one hand, finding through its Commissioners that the property should be rezoned to allow further construction, and, on the other,

attempting to enforce the Covenant, which is in derogation of the City's Zoning Ordinance. The Court agrees with counsel for the City that a Zoning Ordinance is not controlled or changed by restrictive covenants running with the land, which may be privately enforced; however, the City cannot maintain conflicting positions, i. e., on one hand, that it covenanted with the private individuals to maintain certain zoning on this property and, on the other, subsequently and within the time covenanted enact an Ordinance contrary to its Covenant. The Court concludes that the Covenant and the Ordinance passed in consideration thereof are void, as a matter of law. See Osborne v. Allen, 143 Tenn. 343, 226 S.W. 221; City of Knoxville v. Ambrister, 196 Tenn. 1, 263 S.W.2d 528; Baylis v. City of Baltimore, 219 Md. 164, 148 A.2d 429; Hartnett v. Austin, Fla., 93 So.2d 86; State ex rel. Zupancic v. Schimenz, 46 Wis. 2d 22, 174 N.W.2d 533.

"Ordinance 6302, which undertook to amend the Ordinance held void, is likewise void.

"The building permit issued to plaintiffs was issued under authority of said Zoning Ordinance and is likewise void. (See Taylor v. Shetzen, 212 Ga. 101, 90 S.E.2d 572.)"

We are in agreement with the Chancellor and affirm the decree.

We think the question at issue is ruled by the two Tennessee cases cited by the Chancellor. The principle underpinning both is so well stated in Whitley v. White, 176 Tenn. 206, 140 S.W.2d 157, 159, cited by the Court in Knoxville v. Ambrister that we can do no better than quote the pertinent portion of that opinion, which affirmed the decision of this Court:

"Contracts made for the purpose of unduly controlling or affecting official conduct of the exercise of legislative, administrative and judicial functions, are plainly opposed to public policy. They strike at the very foundations of government and intend to destroy that confidence

in the integrity and discretion of public action which is essential to the preservation of civilized society. The principle is universal and is applied without any reference to the mere outward form and purpose of the alleged transaction."

However, more directly controlling is the holding of our Supreme Court in the Ambrister case.

In that case the Luttrell Estate made certain agreements affecting its property for a period of 50 years upon condition the City of Knoxville would re-zone certain of its property to permit the construction of an apartment building in an area zoned residential and, upon demand by the City, to convey the land to it for park and recreational purposes. Thereafter, the City filed its bill for a decree declaring that the land had been dedicated to the City in consideration for the re-zoning of the property.

After citing Osborne v. Allen, supra, and citing and quoting the above portion of the opinion in Whitley v. White, the Court, in the concluding portion of the opinion said:

"In the instant case the offer was to dedicate at a future date certain property in the City to public park purposes, or to convey it to the City for such purposes on condition that the City amend its zoning ordinance, a police measure, so as to meet the wishes of the offerors. Upon receipt of this offer the City Council did amend its zoning ordinance so as to meet those wishes. There seems to be no escape from the conclusion that the case falls within the facts of Osborne v. Allen, supra, and within the facts stated in the rule there applied. Hence, this illegal agreement will not be enforced at the instance of the City of Knoxville, who was a party to it."

Hickerson v. Flannery 42 Tenn.App. 329, 302 S.W.2d 508, cited in the brief is inapposite. There the property owner only bound himself to acts of a nature beneficial to the general public, such as landscaping and the like. The only principle common to that case and this seems to us to be that the covenant ran with the land, a principle which we do not understand to be here seriously questioned.[1]

The same rule with respect to the validity of contracts to influence zoning seems to prevail in numerous other jurisdictions, the consensus being that contracts entered into in consideration of concessions made or to be made favoring the applicant are frowned upon as being against public policy which dictates that zoning is an instrument of public authority to be used only for the common welfare of all the people. See generally Law of Zoning, Metzenbaum, Second Edition, pp. 967, 973, 1072, 3.

It seems proper to note here that a building permit is not a contract and may be changed or entirely revoked even though based upon a valuable consideration if necessary in the exercise of the police power. Howe Realty Co. v. City of Nashville, 176 Tenn. 405, 141 S.W.2d 904; Law of Zoning, supra, p. 1158. See also Moore v. Memphis Stone & Gravel Co., 47 Tenn. App. 461, 339 S.W.2d 29.

It is strongly contended, however, that a court of equity should hold the City estopped to revoke the building permit after complainants have expended large sums of money relying upon the validity of the permit. While we are not unsympathetic with the plight in which complainants find themselves, we can not accede to this contention.

The principle is well established that where both parties have the same means of ascertaining the true facts there can be no estoppel. Crabtree v. Bank, 108 Tenn. 483, 67 S.W. 797; Parkey v. Ramsey, 111 Tenn. 302, 76 S.W. 812.

"It is essential, as a general rule, to the application of the principle of equitable estoppel, that the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the

---

[1]. Nothing in this opinion is to be construed as holding that a planning commission, without a covenant, can not prescribe reasonable conditions for the benefit of the general public.

state of the facts, but was also destitute of any convenient and available means of acquiring such knowledge, and that where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel." Crabtree v. Bank, supra; Hankins v. Waddell, 26 Tenn.App. 71, 167 S.W.2d 694.

It is proper to add that, generally, the doctrine of estoppel does not apply to acts of public authorities. State v. Williams, 207 Tenn. 695, 343 S.W.2d 857.

The record suggests, as above noted, that the building inspector said enough to put complainants upon inquiry as to the existence of the covenant. In any event the instrument creating the covenant and making it run with the land was of record and complainants had constructive notice of its existence. It seems to be unquestioned that to narrow the buffer strip would be to the disadvantage of nearby owners of residential property. We fail to see why they should suffer loss under all the circumstances of this case.

Affirmed and remanded for enforcement of the decree. Complainants and sureties will pay all costs.

PARROTT and SANDERS, JJ., concur.