Glenn R. COPELAND, Pat Copeland, Dale S. Copeland, and Jeanne P. Ellis, Plaintiffs/Appellants,

v.

CITY OF CHATTANOOGA, Through its BOARD OF COMMISSIONERS, Defendant/Appellee.

Court of Appeals of Tennessee, Western Section, at Knoxville.

June 30, 1993.

Application for Permission to Appeal Denied by Supreme Court Nov. 1, 1994.

Mark E. Whittenburg, Ellis, Copeland & Whittenburg, Chattanooga, for plaintiffs/appellants.

Phillip A. Noblett, Chattanooga, Douglas M. Cox, for defendant/appellee.

FARMER, Judge.

This appeal is from a chancery decree holding the conditional zoning of Appellants' property by Appellee valid and a proper exercise of governmental power.

The Board of Commissioners of the City of Chattanooga, Appellee, passed an ordinance which rezoned 18 acres of Appellants' property to C–5 (Neighborhood Commercial District) and R–3 (Residential Zone), rather than C–2 as requested by Appellants. Appellants filed suit seeking to have the ordinance declared invalid. The Chancellor found the denial of the C–2 zoning request arbitrary and ordered Appellants' application remanded to the governing body of the City of Chattanooga for appropriate action consistent with its ruling that Appellants were entitled to have their property zoned C–2

"with appropriate and suitable conditions."[1] Thereafter, Appellee amended its prior ordinance to rezone Appellants' property C–2, subject to certain conditions including the following: "Dedication by the owner of said tract of 12 feet of right-of-way[2] along East Brainerd Road for future road expansion."

Appellants filed a motion to reopen proof and to require specific performance, asserting that the requirement of dedication was not an "appropriate and suitable" condition as contemplated by the Chancellor's order. Appellants sought declaration that this particular condition was void or, in the alternative, an order requiring Appellee to amend the ordinance deleting the requirement of dedication.

After a hearing, the Chancellor denied Appellants' motion and upheld the validity of the condition of dedication imposed in the grant of C–2 zoning as a "reasonable and proper exercise of governmental power." The Chancellor stated:

> The Court was concerned that this might be simply a taking of Mr. Copeland's property. There appeared some question as to whether or not the City was simply making it a condition of the rezoning for Mr. Copeland to give up 12 feet of his property so that if there was future road expansion out there then they would already have his property, but they would avoid the cost of buying it in the future.
>
> . . . .
>
> But the proof before the Court was to the effect that Mr. Marcellis, the traffic engineer, testified it may well be necessary to build acceleration or deceleration lanes if this property is built to its capacity.
>
> . . . .
>
> . . . the quote of [the Court in *Unlimited v. Kitsap County*, 750 P.2d 651 (Wash.App. 1988)] is relevant. They say a property interest can be extracted without compensation only upon a proper exercise of gov-

ernment police power. Such power is properly exercised in zoning conditions where a problem could be remedied by the extraction which arises from a development under consideration, and the extraction is reasonable and for a legitimate public purpose. Unless these requirements are met, extraction is an unconstitutional taking.

> . . . .
>
> . . . the Court is of the opinion that if this requirement of dedication was for the purposes of an acceleration or deceleration lane, which would be necessary for this particular property, it would be a proper exercise of a governmental power and that it would be proper.
>
> If, on the other hand, it was an attempt to simply go ahead and get the property in advance for a widening of East Brainerd Road, then it would be void and an unconstitutional taking.
>
> However, with the presumption to be afforded the action of a governmental body, the Court finds the intent was consistent with the testimony of Mr. Marcellis, . . . .

Appellants filed a motion for new trial and, as amended, asserted that the requirement of dedication constitutes a "taking" without just compensation; that the requirement is discriminatory and unreasonable; and that the court erroneously approved a dedication of property not owned by Appellants. The trial court denied the motion but amended its order to specify that Appellants were not required to dedicate any portion of property not under their control and previously condemned by the State of Tennessee.

We perceive the issue in the instant appeal as whether the requirement that Appellants dedicate 12 feet of right-of-way for future road expansion, as a condition of C–2 zoning, is a proper exercise of governmental power.

---

1. The Chancellor found: Appellants' property consists of two pieces of property (Parcel I and II) which are located in the seventy-six hundred block of East Brainerd Road, Chattanooga, Tennessee. Parcel I consists of approximately fifty-two (52) acres of land which fronts 460' on East Brainerd Road and it is owned by [Appellants], Jean Ellis and Glenn R. Copeland. Parcel II is a 100' × 150' lot fronting on East Brainerd Road adjoining Parcel I and is in its N.W. corner. Parcel II is owned by [Appellants], S. Dale Copeland, Pat Copeland, and Glenn Copeland.

2. Glenn Copeland testified that this is the equivalent of 560 feet in length or almost 2 city blocks.

T.C.A. § 13–7–201(b)[3] authorizes the City of Chattanooga to engage in conditional zoning[4] which has been determined consistent with Tennessee law. *Benton v. City of Chattanooga,* No. 808, 1988 WL 74608 (Tenn.App. filed July 20, 1988). Our scope of review of Appellee's decision to conditionally zone Appellants' property is "quite restricted." *Fallin v. Knox County Bd. of Comm'rs,* 656 S.W.2d 338, 342 (Tenn.1983). Our supreme court in *Fallin* held:

> The restricted role of the courts in reviewing the validity of a zoning ordinance or regulation has been aptly stated as follows: "Zoning is a legislative matter, and, as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion and, in cases where the validity of a zoning ordinance is *fairly debatable,* the court cannot substitute its judgment for that of the legislative authority. If there is a *rational or justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination.* "In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety, or welfare, or is plainly contrary to the zoning laws." 82 Am.Jr.2d *Zoning and Planning* § 338 (1976) at 913–14.

*Fallin,* 656 S.W.2d at 342–43. (Emphasis added.) Simply stated, a legislative body's decision regarding zoning matters "must be affirmed if it is 'fairly debatable.'" *Ray v. Dattel,* No. 24 (Tenn.App. filed August 2, 1985). The fairly debatable standard requires "considerable deference to the decision of the governmental authority." *McCallen v. City of Memphis,* 786 S.W.2d 633, 640 (Tenn.1990). Its decision is "fairly debatable" if it is supported by substantial evidence on the record taken as a whole. *Ray,* slip op. at 10 (quoting *Sedney v. Lloyd,* 44 Md.App. 633, 410 A.2d 616, 619 n. 6 (1980)).

As emphasized in *Fallin,* the zoning ordinance cannot violate a state statute or constitutional guaranty. *Fallin,* 656 S.W.2d at 342–43. Appellants argue that the required dedication is an unconstitutional taking of their property. Although no Tennessee decision, directly on point, has been brought to our attention, Appellants cite numerous decisions from other jurisdictions regarding this issue. In *Unlimited v. Kitsap County,* 50 Wash.App. 723, 750 P.2d 651 (1988), developers sought application to rezone their property, intending to construct a convenience store. *Unlimited,* 750 P.2d at 652. The Kitsap County Board of Commissioners approved the rezoning subject to two conditions. Both involved dedications of a portion of the developers' property. *Id.* at 653. One dedication was for the stated purpose of future extension of road and the other "for commercial access." *Id.*

The Washington Court of Appeals held:

> A property interest can be exacted without compensation only upon a proper exercise of government police power. Such power is properly exercised in zoning situations where the problem to be remedied by the exaction arises from the development under consideration, and the exaction is reasonable and for a legitimate public purpose. Unless these requirements are

---

**3.** (b) In any county having a population of not less than two hundred eighty-seven thousand seven hundred (287,700) nor greater than two hundred eighty-seven thousand eight hundred (287,-800) according to the 1980 federal census or any subsequent federal census, the chief legislative body of any municipality is further authorized and empowered to rezone properties conditionally or based upon contract, where the agreed conditions are designed to ameliorate injuries created by the rezoning to surrounding property interests or to municipal interests.

**4.** Appellants, in their brief, do not assert that this is a matter of contract zoning, requiring a determination of the constitutionality of T.C.A. § 13–7–201(b). *See, Benton,* slip op. at 7.

met, the exaction is an unconstitutional taking.

*Id.* (citing *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987)). The *Unlimited* court held both exactions invalid. The dedication for future extension of road was found invalid absent proof that the development would make the road extension necessary and the dedication for commercial access was determined unreasonable. *Id.* at 652–54.

We find the reasoning of the *Unlimited* court to be sound, applicable to the instant case and in accord with the decision in *Benton.* *Benton* distinguished between contract and conditional zoning. In this Court's discussion of conditional zoning, speaking through Judge Sanders, we stated:

> [The Zoning Administrator] ... testified that the use proposed for [Appellee's] property was appropriate; however, a blanket approval without conditions was not. Problems posing a threat to public safety needed to be rectified before the property could be put to commercial use.
>
> [The Regional Traffic Engineer] ... testified to the dangerousness of the existing access drive irrespective of the zoning....
>
> The existing drive is located amidst an interchange area. It directly crosses an exit ramp from a busy highway before connecting into Bonny Oaks Drive, the public road from which Appellant ingresses and egresses her property. This poses a danger because vehicles from two different roads converge onto Bonny Oaks Drive at the same point. There are visibility or "sight distance" problems. Commercial traffic will only augment those problems. The conditions in the ordinance require that before the property is rezoned, *safer access to it* must be provided.

*Benton,* slip op. at 6–7 (emphasis added).

■ In the instant case, Glenn Copeland testified that Appellants' plans for the property consist of a 60,000 square feet development to include a "[g]rocery store, drug store and several outlying buildings...." Jack Marcellis, the traffic engineer for the City of Chattanooga, testified as to the purpose of the required dedication as follows:

Q What was the purpose for the dedication of the 12 foot right-of-way we were talking about?

A Two reasons. One for capacity of the intersection. Two, for the safety of the roadway and the intersection. Undoubtedly if this property is developed and also especially if the property across the street was developed—if this is also developed we'll end up more than likely with a traffic signal at this intersection, which puts a restriction into the roadway and reduces the traffic capacity.

If the acceleration lane was put on this right turn others could continue flowing into the shopping center. The right turn can continue flowing out of the shopping center into East Brainerd Road and be removed from the traffic signal which gains the added capacity that we need because of this generator being put on East Brainerd Road.

It also saves the accident rate. If traffic had to stop and slow down and make this movement into the intersection, then vehicles behind this stopping or the slowing down vehicle have a tendency to rear end them, and we will have an increase of traffic accidents at this intersection. So if we can remove this movement and put it on an acceleration/deceleration lane we reduce the possibility of rear end type accidents going into this nature of a traffic generator.

. . . .

Q In that experience that you have had, is it appropriate whenever you have a large commercial development to create some sort of deceleration lane?

A We have in the past.

Q How many other occasions are you aware of you have done it in the past?

A Continually have asked for additional rights-of-way to gain added capacity on a roadway.... I pop in my mind also at Hamilton Crossing on Gunbarrel Road we added an acceleration/deceleration there at the Wal–Mart shopping center.

There is a planned shopping center on Hixson Pike just south of Big Ridge Road that we have asked for and both City

Council and City Commission have granted this acceleration/deceleration lane as part of a condition of rezoning.

Q ... In this particular area involving Mr. Copeland's property and the East Brainerd Road area why is it necessary?

A Well, right now that East Brainerd Road should have been widened ten years ago if not more. Even though it is a five lane facility traffic on it ranges anywhere from about 27,000 vehicles a day on down to at the Graysville end as high as 20,000 vehicles a day. Five lane roadway itself has a capacity of something in the order of 25,000 vehicles a day. So there are portions of it—and in front of Mr. Copeland's area are right at the capacity today on opening day of this roadway.

If Mr. Copeland would develop 200,000 square feet of retail space he will add about 10,000 trips into a center of which about 8000 trips will be new trips. Another 2000 would be what I call bypass traffic that are already on East Brainerd that would go into the shopping center.

. . . .

Q Regarding other areas within the City of Chattanooga that these lanes have been involving, let me show you a copy of a couple of ordinances here and ask you if those are ordinances that would have done that very thing?

A The one on Hixson Pike is the one I just referred to. This one on North Town and on Old Hixson we asked for an added right-of-way I know on Hixson because it was a substandard street for the type of roadway. So really a collector roadway with a 50 foot right-of-way, and we're asking for an extra 5 feet on this property owner's side, not for a deceleration/acceleration, but an added width for a left turn bay and a straight through lane.

So one of those is comparable to Mr. Copeland's case....

. . . .

A In Mr. Copeland's case we were asking for specifically for an acceleration/deceleration lane to service his development, not for continual traffic along the roadway like we have on the Austin road case. That is

what we also asked for on the Hixson Pike deceleration/acceleration lane for that site.

Q In your opinion, ... is it appropriate to have an extra lane for deceleration/acceleration into Mr. Copeland's proposed exit for the health and safety of the people on that roadway?

A Yes, sir.

Q ... If this development that goes in there—will that cause any additional traffic problems to the roadway as it now exists after the construction of the five lanes?

A Yes ... the anticipated extra traffic will probably bring the capacity of the roadway—bring the traffic over the capacity of the roadway.

On cross-examination, Mr. Marcellis' testimony continued as follows:

Q Mr. Marcellis, as far as your calculations insofar as what new trips Mr. Copeland's development may cause on East Brainerd Road, ... is your calculation based on the assumption that the development on this property is going to be in the neighborhood of 200,000 square feet?

A That is what I have calculated. It's an 18 acre development. If you come up with 200,000 square feet that is less than 5 acres.... So Mr. Copeland could, if he uses the full potential of his land, even get beyond 200,000 square feet of retail space.

. . . .

Q ... And the property you referred to where dedication of land's been required before the Hamilton Crossing or the Wal-Mart and some other stores in this shopping center that has been planned on Hixson Pike, aren't those developments consisting of several hundred acres each?

A Well, no, sir. That one that Wal-Mart's on I think is something on the order of 30 acres or 40, but it's about almost 400,000 square feet of retail space that was actually built.

The one on Hixson Pike is not built, and plans as far as I know have not been developed. But what they were talking about was something similar to what Mr. Copeland's building. One is near the 200,-

000—100,000, a grocery store and a few other extra buildings.

Q   Well, the Hixson Pike property, weren't they really dealing with a couple of hundred acres out there?

A   I don't believe it was anywhere near that size. I think it was much smaller.

Q   And you testified a minute ago that so far as you were concerned the necessity for the dedication of property was for an acceleration/deceleration lane, but that is really not what the City Council and their ordinance has asked for, is it?

A   ... we explained to them that it was going to be was [sic] an acceleration/deceleration lane to mitigate the friction of the heavy right turns coming in and heavy right turns leaving the site.

After review of the entire record, we find that the evidence supports the Chancellor's finding that the conditional zoning by Appellee was a proper exercise of government police power. Mr. Marcellis' testimony reveals that the development of Appellants' property would create a problem remedied by the exaction. Although the videotapes of the two city counsel meetings reveal a concern by some members that the City might need the property in the future and, therefore, be required to purchase it, the overwhelming evidence supports a finding that it is this particular development that will create a problem remedied by the construction of an acceleration/deceleration lane.

We further find Appellants' argument that the conditional zoning of their property was discriminatory and unreasonable without merit. Mr. Marcellis' testimony reveals that property in other similar areas, although, admittedly none on East Brainerd Road, were rezoned upon the condition of dedication. Appellants argue that these other properties involved much larger retail space than Appellants' proposed development of 60,000 square feet. The proof shows, however, that Appellants' property of 18 acres could contain as much as 200,000 square feet of retail space, if not more.

Absent a finding that the actions taken by the zoning authority are unconstitutional, we find its decision "supported by substantial evidence on the record taken as a whole" and, thus, "fairly debatable." The judgment of the trial court is affirmed. Costs are taxed to Appellants, for which execution may issue if necessary.

**AFFIRMED AND REMANDED.**

CRAWFORD and HIGHERS, JJ., concur.