IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 13, 2025 Session

## LOVEDAY SPRINGS ET AL. v. KNOX COUNTY, TENNESSEE, ET AL.

Appeal from the Circuit Court for Knox County
No. 1-219-22            E. Jerome Melson, Judge

_____

### No. E2025-00233-COA-R3-CV
_____

In this zoning matter, the trial court granted summary judgment in favor of the respondent county and property development company and dismissed the petitioners' declaratory judgment action. The petitioners had challenged a sector plan amendment and rezoning as illegal. Contrary to the petitioners' argument, the trial court specifically found that the county zoning body maintained the authority under Tennessee Code Annotated § 13-7-101 to impose conditions on the rezoning of the subject property. The petitioners have appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, P.J., E.S., and KRISTI M. DAVIS, J., joined.

Daniel A. Sanders, Knoxville, Tennessee, for the appellants, Loveday Springs, Dawn Close, and Margie Grace.

Michael W. Moyers, Knox County Law Director; Garrett P. Swartwood; and Taylor D. Forrester, Knoxville, Tennessee, for the appellees, Knox County, Tennessee, and Thunder Mountain Properties, LLC.

## OPINION

### I. Factual and Procedural Background

On July 22, 2022, the petitioners—a homeowners' association in Knox County, Tennessee, known as Loveday Springs, and two of its members, Dawn Close and Margie Grace (collectively, "Petitioners")—filed a petition for declaratory judgment in the Knox County Circuit Court ("trial court"). They named as respondents Knox County and

Thunder Mountain Properties, LLC ("TMP"). In April 2021, TMP had purchased approximately 159 acres of real property located at 8802 Sevierville Pike and Dry Hollow Road in Knox County ("the Property"). As Petitioners described it in their complaint:

> The Subject Property forms a horseshoe shape around an industrial area on Valgro Road originally developed by the Camel Tent Manufacturing Company in the 1930s. Approximately 64 acres of the Subject Property lying generally to the north of Valgro Road is comprised of low-lying pastureland with access to Sevierville Pike. The remaining 95 acres lying generally to the south of Valgro Road is comprised of steep hillsides and lacks ready access to any public road.

At the time of TMP's purchase, the Property was designated a "rural" area under the Knoxville-Farragut-Knox County Growth Policy Plan ("the Growth Plan") and as "agricultural" under both the Knoxville-Knox County General Plan 2033 ("the General Plan") and the Knox County Zoning Ordinance ("the Zoning Ordinance"). The Loveday Springs neighborhood is located across Sevierville Pike from the Property.

In September 2021, TMP had applied to the Knoxville-Knox County Planning Commission ("the Planning Commission") requesting a general plan amendment and rezoning for the 64 acres of pastureland from "agricultural" to "low density residential." In November 2021, TMP submitted a revised application requesting the same zoning change for the other 95 acres of the Property. In December 2021, the Planning Commission approved a general plan amending the 64-acre parcel to low density residential and the 95-acre parcel to "rural residential" with approval of rezoning for the entire Property as "planned residential." According to the complaint, the Planning Commission's approval of the rezoning was subject to the following three conditions:

1. a maximum of 2.5 dwelling units per acre on the 64 acres of pastureland,

2. a maximum of 1 dwelling unit per acre could be developed on the 95 acres of steep hillside, and

3. a total of 255 units on the total property with development concentrated on the flatter part of the property.

(Internal quotation marks and emphasis omitted.)

The Knox County Commission ("County Commission") heard TMP's request during two meetings, which were held in February and May of 2022. Several community members spoke in opposition. On May 23, 2022, the County Commission met in a zoning session to consider TMP's sector plan amendment and rezoning request. In a transcript

incorporated into the trial court's final judgment, the court set forth the undisputed facts surrounding what Petitioners alleged to be an unlawful decision made during the May 2022 zoning session:

> [O]n the 23rd day of May, 2022, the Knox County Commission heard arguments for and against the required sector plan . . . the requested sector plan amendments and rezoning for the subject property.
>
> It is undisputed that various persons, as are reflected in the pages of the transcript, spoke on behalf of the affected parties, including Mr. Taylor D. Forrester speaking on behalf of TMP and Daniel A. Sanders speaking on behalf of certain residents opposed—certain residents in the area of the subject property opposed to the proposed amendments.
>
> It is also of record in this case, pursuant to the filings made herein, that during consideration of the resolutions various individuals and commissioners in addition to Mr. Forrester and Mr. Sanders, as well as Knox County Deputy Law Director Michael Moyers, also spoke concerning those requested amendments.
>
> And that it is further of record in this case, as demonstrated by the transcript and by the associated minutes of the Knox County Commission, that Commissioner Carson Dailey commented on the residential, commercial and public development in the area, including such things as a reference to condominium and apartment developments in the area, continued expansion of the commercial development at that intersection of Chapman Highway and Governor John Sevier Highway and other matters.
>
> It is, of course, noted in the minutes that Commissioner Schoonmaker, as has been mentioned here this morning, moved to amend the zoning classification for the subject property from agricultural to planned residential at a density of up to 180 dwelling units on the lower portion of the subject property and up to 77 dwelling units on the upper portion of the subject property subject to the condition that the development of the 180 lots be platted on the lower portion before development could commence on the platting of the 77 lots on the upper portion of the subject property, and that the removal of the condition recommended by the planning commission to allow clustering of the density. That motion was seconded by Commissioner Dailey and the Knox County Commission approved that motion—original motion of Commissioner Schoonmaker's by a vote of eight to three.

That action, it is urged in this case, is by the petitioners to be viewed as one that was unlawful or illegal. That is to say not in—not pursuant to authority given the Knox County Commission.

In their complaint, Petitioners requested a judgment declaring the County Commission's decision "illegal, arbitrary, capricious, and void on any grounds available under law." They specifically alleged that the County Commission's decision violated the General Plan and the Growth Plan and that it constituted illegal rezoning and a misconstruction of applicable law. Petitioners asserted that TMP "desire[d] to develop a residential subdivision on the Subject Property and the Petitioners desire[d] to prevent the development or to limit the allowed population density."

In August 2022, TMP and Knox County filed separate answers to the complaint, asserting that Petitioners had failed to state a claim upon which relief could be granted. Knox County concomitantly filed the record from the County Commission decision, including transcripts of the February and May 2022 meetings during which the Commission had discussed TMP's application.

On June 21, 2024, Knox County and TMP (collectively, "Respondents") jointly filed a motion for summary judgment, asserting that they were "entitled to a judgment as a matter of law upholding the legislative action of the County Commission." On October 4, 2024, Petitioners filed a competing motion for summary judgment, asserting that they were "entitled to judgment as a matter of law" because "there [was] no genuine issue of material fact concerning whether the Knox County Commission acted illegally when it approved the rezoning application at issue." Petitioners specifically argued that the County Commission did not have the authority to impose conditions on rezoning under Tennessee Code Annotated § 13-7-101. The parties filed responses to the respective summary judgment motions and briefed the issue of conditional zoning as had been requested by the trial court in a scheduling order.

Following a hearing, the trial court entered an order on January 17, 2025, granting summary judgment in favor of Respondents and denying Petitioners' summary judgment motion. The court concluded that the County Commission had not acted illegally, specifically determining that Tennessee Code Annotated § 13-7-101(a) granted zoning authority to the County Commission and that § 13-7-101(b) did not operate to disallow conditional zoning within that authority. The court further concluded that a rational basis existed for the County Commission's legislative actions related to rezoning the Property and amending the sector plan. Petitioners timely appealed.

II. Issue Presented

Petitioners present the following issue, which we have restated as follows:

Whether the trial court erred by declining to find that the County Commission exceeded its statutory authority under Tennessee Code Annotated § 13-7-101 when it conditionally rezoned the Property by imposing parcel-specific conditions.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* [*v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If

a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

Petitioners have raised an issue focusing on interpretation of Tennessee Code Annotated § 13-7-101 (West April 16, 2012, to current). In conducting this analysis, we adhere to the following longstanding principles of statutory construction:

When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent

and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

## IV. Authority of County Commission

Petitioners contend that the trial court erred by finding that the County Commission acted within its authority under Tennessee Code Annotated § 13-7-101 when it imposed conditional zoning on the Property. Respondents argue that the trial court properly found that the County Commission was empowered to impose conditional zoning and correctly determined that a rational basis existed for the Commission's rezoning decision. Upon careful review, we determine that the trial court did not err in determining that the County Commission maintained the authority to conditionally rezone the Property.

Concerning appellate review of zoning decisions, our Supreme Court has explained:

> Our county legislative bodies are vested with broad powers to enact and to amend zoning regulations governing the use of land. T.C.A., §§ 13-7-101–13-7-105. When a municipal governing body acts under its delegated police powers either to adopt or amend a zoning ordinance, it acts in a legislative capacity and the scope of judicial review of such action is quite restricted. *Davidson County v. Rogers*, 184 Tenn. 327, 198 S.W.2d 812 (1947); *Mobile Home City of Chattanooga v. Hamilton County*, *supra*; *Barret v. Shelby County*, Tenn. App., 619 S.W.2d 390 (1981).
>
> > "Legislative classification in a zoning law, ordinance or resolution is valid if any possible reason can be conceived to justify it." *State ex rel. SCA Chemical Waste Services, Inc. v. Konigsberg, Tenn.*, 636 S.W.2d 430, 437 (1982).

*Fallin v. Knox Cnty. Bd. of Comm'rs*, 656 S.W.2d 338, 342 (Tenn. 1983). As the *Fallin* Court further explained:

> Zoning is a legislative matter, and, as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion and, in cases where the

validity of a zoning ordinance is fairly debatable, the court cannot substitute its judgment for that of the legislative authority. If there is a rational or justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination.

In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety, or welfare, or is plainly contrary to the zoning laws.

*Id.* at 342-43 (quoting 82 Am. Jur. 2d *Zoning and Planning* § 338 (1976)). *See Keeton v. City of Gatlinburg*, 684 S.W.2d 97, 98 (Tenn. Ct. App. 1984) (noting that in reviewing a municipal governing body's zoning decisions, "[t]he court's inquiry is limited as to whether any rational basis exists for the legislative action and, if the issue is fairly debatable, it must be permitted to stand as valid legislation").

Tennessee Code Annotated § 13-7-101 concerns the grant of regulatory powers to county legislative bodies and provides in pertinent part:

(a)(1) The county legislative body of any county is empowered, in accordance with the conditions and the procedure specified in this part, to regulate, in the portions of such county which lie outside of municipal corporations, the location, height and size of buildings and other structures, the percentage of lot which may be occupied, the sizes of yards, courts, and other open spaces, the density and distribution of population, the uses of buildings and structures for trade, industry, residence, recreation or other purposes, and the uses of land for trade, industry, residence, recreation, agriculture, forestry, soil conservation, water supply conservation or other purposes, and identify areas where there are inadequate or nonexistent publicly or privately owned and maintained services and facilities when the planning commission has determined the services are necessary in order for development to occur. . . .

* * *

(b) The chief legislative body of any county having a population of not less than two hundred eighty-seven thousand seven hundred (287,700) nor greater than two hundred eighty-seven thousand eight hundred (287,800), according to the 1980 federal census or any subsequent

federal census, <u>is further authorized and empowered to rezone properties conditionally or based upon contract, where the agreed conditions are designed to ameliorate injuries created by the rezoning to surrounding property interests or to county interests.</u>

(Emphasis added.)  Petitioners attached to their motion for summary judgment federal census population figures for Tennessee's counties, beginning with the 1980 census.  The trial court took judicial notice of these figures, and the parties agreed that the population range set forth in § 13-7-101(b) of 287,700 to 287,800 applies to Hamilton County but does not apply to Knox County.

It is undisputed that when the County Commission rezoned the Property, it engaged in conditional zoning by imposing conditions specific to parcels within the Property.  This Court has previously defined conditional zoning in part by differentiating it from contract zoning:

> It is the use of governmental power as a bargaining chip that the [*City of Knoxville v.*] *Ambrister* [263 S.W.2d 528 (Tenn. 1953)] and *Haymon* [*v. City of Chattanooga*, 513 S.W.2d 185 (Tenn. Ct. App. 1973)] courts criticized as the unsavory aspect of contract zoning.  When a government negotiates in this manner it agrees to limit its right and duty to act on behalf of the public.  Rezoning is approved, not based upon the merit of the zone change request nor because it is in the public interest, but because a deal has been struck.

> On the other hand, the mere unilateral imposition of conditions for public benefit is quite different.  In contract zoning the government entity sacrifices its authority.  In conditional zoning it exercises it.  By imposing conditions under which Homestead's property could be rezoned, Chattanooga did not bargain away its authority, but rather exercised it for public safety reasons.

*Citizens for Safety & Clean Air v. City of Clinton*, 434 S.W.3d 122, 129 (Tenn. Ct. App. 2013) (quoting *Benton v. City of Chattanooga*, No. 808, 1988 WL 74608, at *2-3 (Tenn. Ct. App. July 20, 1988)).

Petitioners argue that because § 13-7-101(b) authorizes contract and conditional zoning for Hamilton County and any other county that may qualify under the population range specified, it operates to prohibit contract and conditional zoning for counties with populations not in that range.  Respondents acknowledge that contract zoning has long been disallowed in Tennessee unless specifically authorized.  *See Citizens for Safety & Clean Air*, 434 S.W.3d at 129; *City of Knoxville v. Ambrister*, 263 S.W.2d 528, 530 (Tenn. 1953) ("Contracts made for the purpose of unduly controlling or affecting official conduct

of the exercise of legislative, administrative and judicial functions, are plainly opposed to public policy." (quoting *Whitley v. White*, 140 S.W.2d 157, 159 (Tenn. 1940))). However, Respondents assert that conditional zoning has long been allowed in Tennessee and that the General Assembly's inclusion of conditional zoning in § 13-7-101(b) was simply in furtherance of established law for all Tennessee counties.

The trial court made the following findings regarding the County Commission's authority under § 13-7-101 to conditionally zone the Property:

> As has been mentioned, it is the contention of the petitioners that the conditional zoning authority or conditional zoning action undertaken by the Knox County Commission on the date as specified herein is not lawful and is, and may be construed as a matter of law, to be illegal. Nevertheless the petitioners are forced to concede and do readily concede to this court that under TCA 13-7-101 there is a grant of zoning power statute that generally does apply to a county legislative body and did so apply to Knox County at all times material hereto. And, as such, [the] statute does recognize that the county legislative power is empowered in accordance with the conditions and the procedures specified in this part to regulate in the portions of such county which lie outside of municipal corporations many things, that include by reference to the verbiage of the statute, the location, height and size of buildings and other structures, the percentage of lot which may be occupied, the sizes of yards, courts and other open spaces, the density and distribution of population, the uses of buildings and structures for trade, industry, residence, recreation or other purposes, and the uses of land for trade . . . industry, residence, recreation, agriculture, forestry, soil conservation, water supply conservation or other purposes. And identified areas where there are inadequate or nonexistent publicly or privately owned and maintained services and facilities when the planning commission has determined the services are necessary in order for development to occur.
>
> Reading only that portion of the statute, the court as well as the parties recognizes that the county legislative body of Knox County is empowered with a great range and scope of authority as respects regulating the use of land as in many different ways and varieties within its boundaries.
>
> In respect of this matter, the court concludes that the decisional law that has been cited reflective of an examination of the statutory language does not, to the satisfaction of this court, demonstrate that there is any explicit, judicial recognition that the use of conditional zoning within Tennessee is disallowed, is illegal and/or is unlawful.

Upon thorough review of § 13-7-101 and other applicable authorities, we agree with the trial court.

In describing "decisional law," the trial court specifically referenced this Court's decision in *O'Dell v. Bd. of Comm'rs of Johnson City*, 910 S.W.2d 436 (Tenn. Ct. App. 1995). On appeal, Petitioners take issue with the trial court's reliance on *O'Dell* and assert that the *O'Dell* decision "should be limited or overruled." In *O'Dell*, this Court affirmed the trial court's finding that rezoning of the property at issue had not constituted "impermissible contract zoning." *O'Dell*, 910 S.W.2d at 437. Petitioners do not challenge the holding regarding contract zoning. However, the *O'Dell* Court quoted the trial court with approval in finding that conditions imposed by the zoning authority had been reasonable and were allowed under the law:

> [U]nder the authority of the cases mentioned, the Court cannot find any illegal contract zoning. The City's imposition of conditions as a requirement of rezoning were reasonable and were a valid exercise of their police power for the good of the general public. The conditions imposed were to regulate traffic, [were] for the safety of the general public and [were] to provide a buffer zone adjacent to Mountcastle Hills Subdivision. All of these conditions are reasonable. And they're reasonable considerations of a zoning authority.

*Id.* at 441. We note that in *O'Dell*, this Court expressly stated that it "concur[red] in [the trial court's] findings of fact and conclusions of law, which are made an appendix to this opinion." *Id.* at 437.

*O'Dell* was decided after the General Assembly amended § 13-7-201 in 1984 to add subsection (b).[1] *See Benton v. City of Chattanooga*, No. 808, 1988 WL 74608, at *2 (Tenn. Ct. App. July 20, 1988). The "authority of the cases mentioned" above in *O'Dell* included two cases decided before the enactment of subsection (b)—*City of Knoxville v. Ambrister*, 263 S.W.2d 528 (Tenn. 1953), and *Haymon v. City of Chattanooga*, 513 S.W.2d 185 (Tenn. Ct. App. 1973)—and two cases decided afterward—*Copeland v. City of Chattanooga through Bd. of Comm'rs*, 866 S.W.2d 565, 567 (Tenn. Ct. App. 1993), and *Benton*, 1988 WL 74608.

In *Armbrister*, our Supreme Court upheld the trial court's determination that the City of Knoxville was not entitled to a judgment declaring that a parcel of land had been

---

[1] Tennessee Code Annotated § 13-7-201 (West April 16, 2012, to current) is a counterpoint to Tennessee Code Annotated § 13-7-101 and addresses regulatory powers granted to municipalities. Subsection -201(b) contains the same substantive language as subsection -101(b) and is applicable to municipalities located within counties that have the same population range. For this reason, we determine that case law analyzing § 13-7-201(b) is applicable to § 13-7-101(b). The General Assembly amended § 13-7-101 to add subsection (b) in 1985. *See* 1985 Tenn. Pub. Acts, Ch. 44, § 1.

dedicated to the city by the defendant landowners upon determining that the purported dedication constituted illegal contract zoning. *Armbrister*, 263 S.W.2d at 530-31. The *Armbrister* Court thereby helped to establish that contract zoning is disallowed in Tennessee but did not address conditional zoning. In *Haymon*, this Court affirmed the trial court's finding that a zoning ordinance was void that had been passed in consideration of a covenant, also found to be void, between the City of Chattanooga and the plaintiff apartment complex owners because the covenant constituted contract zoning. *Haymon*, 513 S.W.2d at 187. However, regarding conditional zoning, the *Haymon* Court stated: "Nothing in this opinion is to be construed as holding that a planning commission, without a covenant, cannot prescribe reasonable conditions for the benefit of the general public." *Id.* at 188 n.1.

This Court decided *Benton* four years after the 1984 amendment adding subsection (b) to § 13-7-201. Because Chattanooga is located within Hamilton County, *Benton* (and subsequently *Copeland*, as explained below) involved a municipality that fit within the population parameters of § 13-7-201(b). The plaintiff in *Benton* had filed a declaratory judgment action challenging a city rezoning ordinance and arguing that the ordinance was illegal because it constituted contract zoning. *Benton*, 1988 WL 74608, at *1. On this basis, the *Benton* plaintiff had challenged the constitutionality of § 13-7-201(b). *Id.* The *Benton* trial court had upheld the ordinance upon finding that it "involve[d] only conditional zoning." *Id.* at *4. For this reason, the trial court had determined that it need not address the constitutionality of § 13-7-201(b). *Id.* at *1. This Court affirmed the trial court:

> We hold the chancellor properly construed the facts to involve only conditional zoning. Section 13-7-201(b) authorizes Chattanooga to engage in conditional zoning. Since conditional zoning is consistent with Tennessee law, the constitutionality of the provision need not be reached at this time. However, as the chancellor duly noted, determination of the constitutionality of § 13-7-201(b) would be proper in a case where contract zoning has taken place.

*Id.* at *4 (emphasis added). In determining that conditional zoning was "consistent with Tennessee law" and therefore did not raise a constitutionality issue regarding § 13-7-201(b), the *Benton* Court cited the holdings in *Armbrister* and *Haymon* with approval. *Id.* at *3-4 (citing *Armbrister*, 263 S.W.2d 528; *Haymon*, 513 S.W.2d 185).

This Court decided *Copeland* several years later, affirming the trial court's finding that the City of Chattanooga's imposition of a condition (dedication of a right-of-way) upon the defendant landowners' rezoning request had been "a proper exercise of government police power." *Copeland*, 866 S.W.2d at 570. The *Copeland* Court cited Tennessee Code Annotated § 13-7-201(b) and stated that the statute "authorizes the City of Chattanooga to engage in conditional zoning which has been determined consistent with

Tennessee law." *Id.* at 567 (emphasis added) (footnote omitted). The *Copeland* Court noted that the appellants had not asserted that the issue was "a matter of contract zoning, requiring a determination of the constitutionality of T.C.A. § 13-7-201(b)." *Id.* at 567 n.4. In other words, if the *Copeland* appellants had challenged the city's actions on the basis of contract zoning, the constitutionality of the statute would have been at issue because the statute allows Hamilton County to engage in contract zoning, and contract zoning had previously been held to be against public policy. However, the *Copeland* Court did not find that the provision for conditional zoning in § 13-7-201(b) required a constitutional analysis because it was already "consistent with Tennessee law." *Id.*

Returning to the trial court's reliance on *O'Dell*, Petitioners here argue that the *O'Dell* decision was flawed because (1) the *O'Dell* plaintiff did not directly challenge the city zoning board's authority under statute; (2) the *O'Dell* Court relied on decisions involving Chattanooga, which was covered by the population parameters of § 13-7-201(b) when Johnson City was not; (3) the statement in *O'Dell* regarding conditions imposed by the city as a valid exercise of police power was "dicta"; and (4) the decision included a "peculiar caveat" questioning whether the plaintiff had standing to challenge the zoning decision. We do not find these arguments persuasive and will address each in turn.

First, although the *O'Dell* plaintiff did not challenge the city's zoning authority under the statute, he did challenge the validity of the city's zoning ordinance, which required the trial court and this Court to review the statute empowering the city with zoning authority. Second, as noted above, the *O'Dell* Court analyzed case law predating the General Assembly's addition of § 13-7-201(b), particularly *Haymon*, 513 S.W.2d at 188 n.1, to establish that conditional zoning was already allowed in Tennessee when subsection (b) was added to the statute. *See O'Dell*, 910 S.W.2d at 439. Third, we find the *O'Dell* Court's statement regarding the "imposition of conditions" as "a valid exercise of [the city zoning body's] police power" to be integral to the Court's determination that the conditional zoning at issue was allowed. *See id.*, 910 S.W.2d at 441. Fourth, contrary to Petitioners' argument, we do not find that the question of standing undercut the Court's holding in *O'Dell*; instead, the Court determined that <u>if</u> the zoning at issue had been a contract, the plaintiff would have been a party to that contract and may have lacked standing to challenge its validity. *See id.* at 437. This statement undercut the plaintiff's argument, but it did not undercut the Court's holding. Importantly, *O'Dell* is a reported case of this Court with no negative history and with a holding that we determine to be aligned with Tennessee precedent on conditional zoning. We decline to find the *O'Dell* decision "unsound," as Petitioners' urge.

Despite the precedent explained above, Petitioners advance the position that because § 13-7-101(b) "separately and explicitly confers conditional zoning authority" on counties meeting the population criteria of 287,700 to 287,800, "such authority is not implicitly granted under subsection (a)" to other counties. In support, Petitioners rely on the canon of statutory construction, *expressio unis est exclusio alterius*, which holds that "the

- 13 -

expression of one thing implies the exclusion of others." *See Northshore Corridor Assoc. v. Knox Cnty.*, 633 S.W.3d 561, 567 (Tenn. Ct. App. 2021) (quoting *Rich v. Tenn. Bd. of Med. Exam'rs*, 350 S.W.3d 919, 927 (Tenn. 2011)). Petitioners assert that the General Assembly's use of the phrase, "further authorized and empowered," in subsection -101(b) means that any stated authority or power following that phrase—namely, "to rezone properties conditionally or based upon contract"—is illegal because it is not "implicitly granted" by subsection -101(a).

In *Northshore Corridor*, this Court affirmed the trial court's application of *expressio unis est exclusio alterius* to interpretation of a zoning ordinance to hold that "the absence of public utilities as a permitted use in the PR [planned residential] zone when such were expressly permitted in other residential zones indicated that public utilities had been expressly excluded from the PR zone." *Northshore Corridor*, 633 S.W.3d at 580. Here, rather than examining a list of uses prescribed in a zoning ordinance, we are confronted with the broad authority granted to county legislative bodies by subsection -101(a) to regulate the uses of land within their purview. Given the longstanding precedent establishing that conditional zoning is within this authority, we are not persuaded that the mention of conditional zoning in subsection -101(b) precludes counties not identified by subsection -101(b) from engaging in conditional zoning.[2]

Petitioners further argue that the zoning statutory scheme supports their position that the County Commission exceeded its authority by imposing parcel-specific conditions. They cite the requirement provided in Tennessee Code Annotated § 13-7-102 (West June 13, 2008, to current) that "regulations shall be uniform for each class or kind of buildings throughout any such district"; the requirement provided in Tennessee Code Annotated § 13-7-119(a) (West June 1, 2009, to current) that county zoning bodies must compile zoning ordinances "so as to be able to provide any member of the public with a current zoning ordinance and map"; and the requirements delineated in Tennessee Code Annotated § 13-7-105 (West March 8, 2016, to current) for amendment of ordinances. Petitioners argue that because Respondents imposed conditions on the Property during County Commission meetings, members of the public would have to search meeting minutes to know what

---

[2] Apparently as an alternative argument, Respondents posit that the General Assembly included conditional zoning in § 13-7-101(b) because both the conditional and contract zoning allowed by the subsection involve "agreed conditions," *see* Tenn. Code Ann. § 13-7-101(b), as opposed to the "unilateral imposition of conditions" by a county that has been held to be consistent with Tennessee law, *see Citizens for Safety & Clean Air*, 434 S.W.3d at 129 (quoting *Benton*, 1988 WL 74608, at *3). In support, Respondents argue that the "series qualifier canon" operates to apply the entire clause beginning with "where" at the end of § 13-7-101(b) ("where the agreed conditions are designed to ameliorate injuries created by the rezoning to surrounding property interests or to county interests") to both "conditionally" and "based upon contract" preceding the clause. *See* READING LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (Thomson/West 2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series."). Given that "conditionally" and "based upon contract" are not nouns or verbs in a series, we do not find this to be a viable application of the series qualifier canon.

- 14 -

conditions were imposed. Petitioners thereby posit that Respondents' actions in imposing parcel-specific conditions and a lack of transparency in imposing the conditions were against the overall zoning statutory scheme.

Respondents counter that Petitioners have waived any issue regarding whether Respondents improperly amended the Zoning Ordinance because they failed to raise the issue at the trial court level. Respondents also posit that the imposition of unilateral conditions does not equate to amending a zoning ordinance as contemplated by § 13-7-105. In reply, Petitioners insist that their argument regarding the statutory scheme is all part of one issue: whether the County Commission exceeded its authority. We note that Petitioners' statement of the issue on appeal is specific to the County Commission's authority under § 13-7-101 and that Petitioners do not allege that the language of § 13-7-101 is ambiguous. *See In re Estate of Tanner*, 295 S.W.3d at 614 ("It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources."). Moreover, having determined that the County Commission maintained the authority under § 13-7-101 to impose conditions when rezoning the Property, we find Petitioners' arguments regarding the broader statutory scheme to be unavailing.

Finally, Petitioners do not argue that the trial court erred by finding that the County Commission maintained a rational basis for the subject zoning decision. Instead, they assert that the court erred by applying the rational basis standard of review based on their contention that the County Commission did not have authority to impose conditions. We have concluded that the County Commission maintained this authority. As to the rational basis for the County Commission's decision, the trial court specifically determined that "there was an extensive consideration of factors relating to the public welfare that underlay the decision of the Knox County Commission to approve the rezoning with the conditions[.]" Upon thorough review of the record, we agree that the County Commission's decision to rezone the Property with the conditions imposed was predicated on a rational basis. *See, e.g.*, *Fallin*, 656 S.W.2d at 343-44 ("We are unable to conclude that the legislative classification represented by the amendatory resolution of the Knox County Board of Commissioners is without any rational basis; we consider that the issue is fairly debatable and, therefore, that we must permit it to stand as valid legislation.").

## V. Conclusion

For the foregoing reasons, we affirm the trial court's judgment. We remand this case to the trial court for enforcement of the judgment and collection of costs below. Costs on appeal are assessed to the appellants, Loveday Springs, Dawn Close, and Margie Grace.

s/Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE

- 15 -